JAMES M. WALSH *vs.* COMMONWEALTH.

Suffolk. May 4, 1970. — July 15, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Practice, Criminal,* Sentence, Appellate Division, Double jeopardy. *Constitutional Law,* Double jeopardy, Due process of law.

Discussion of the functions of the Appellate Division of the Superior Court, existing under G. L. c. 278, §§ 28A–28D. [195–196]

An increase of the sentence in a criminal case upon a review by the Appellate Division of the Superior Court requested by the defendant under G. L. c. 278, §§ 28A–28D, did not violate the double jeopardy clause of the Fifth Amendment of the Federal Constitution. [196–198]

An increase of the sentence in a criminal case upon a review by the Appellate Division of the Superior Court under G. L. c. 278, §§ 28A–28D, without a statement of the reasons for the increase did not violate the due process clause of the Fourteenth Amendment of the Federal Constitution where the defendant did not allege or proffer evidence on a petition for a writ of error that his sentence was increased because of vindictiveness. [200–201]

The due process rule of *North Carolina* v. *Pearce*, 395 U. S. 711, is in-
applicable to procedure of the Appellate Division of the Superior Court
under G. L. c. 278, §§ 28A–28D. [201]

PETITION for a writ of error filed in the Supreme Judicial
Court for the county of Suffolk on September 18, 1969.

The case was reserved and reported by *Quirico, J.*

*John C. Cratsley* for the petitioner.

*Jeremiah T. O'Sullivan,* Deputy Assistant Attorney Gen-
eral, for the Commonwealth.

QUIRICO, J.  This is a petition for a writ of error brought
by James M. Walsh (petitioner) alleging that the order
of the Appellate Division of the Superior Court, acting
under G. L. c. 278, §§ 28A–28D, increasing a sentence
previously imposed on him by a judge of the Superior Court
violated his rights under both the United States and Massa-
chusetts Constitutions.  The single justice reserved and
reported the case without decision for the determination of
the full court upon the petition, the assignments of error,
the Commonwealth's answer, the return of the Superior
Court, and a statement of agreed facts.

On January 24, 1968, the petitioner pleaded guilty to
three indictments for armed robbery (#78,600, #78,601, and
#78,602).  Upon acceptance of his plea, a judge of the Su-
perior Court sentenced the petitioner to the Massachusetts
Correctional Institution, Walpole, for a term not exceeding
ten years nor less than five years on each indictment, the
sentences to run concurrently.  The petitioner was notified
of his right to appeal for review of his sentences under
c. 278, § 28B, and he elected to appeal.  The Appellate
Division held a hearing on the appeals on July 15, 1968.
No transcript was made of the proceedings at that hearing.
The petitioner was present and represented by counsel at
that hearing as he had been at the earlier sentencing proceed-
ing.  *Croteau, petitioner,* 353 Mass. 736, 738.  On July 19,
1968, the Appellate Division entered orders dismissing the
appeals on indictments #78,600 and #78,601 and amending
the sentence originally imposed on indictment #78,602 by
increasing it to a term of not more than twelve years nor

less than eight years.[1]  On September 17, 1968, a justice of the Superior Court resentenced the petitioner on indictment #78,602 in accordance with the order of the Appellate Division. The sentences on all three indictments are now being served concurrently.

Before discussing the issues in this case, a brief description of the Appellate Division and its function is appropriate. The Appellate Division of the Superior Court was established by St. 1943, c. 558, § 1, "for the review of sentences to the state prison imposed by final judgments in criminal cases . . . and for the review of sentences to the reformatory for women for terms of more than five years imposed by final judgments in such criminal cases." It is composed of three judges of the Superior Court designated therefor by the Chief Justice of that court.  C. 278, § 28A, as appearing in St. 1945, c. 255, § 1.[2]  It was conceived as a vehicle whereby extreme harshness or leniency by judges in sentencing could be corrected.  Eighteenth Report of the Judicial Council (December, 1942), Pub. Doc. No. 144, pp. 28–30.  See Powers, The Basic Structure of the Administration of Criminal Justice in Massachusetts (5th ed. 1968) pp. 64–65.  The appeal to the Appellate Division is not a substitute for any appeal which a defendant may be entitled to take to the Supreme Judicial Court.  He may pursue either or both types of appeal after being convicted and sentenced.

When an individual receives a sentence which may be reviewed by the Appellate Division, he must be notified of that right to appeal.  He then has ten days from the imposition of the sentence to file his appeal with the clerk of the court.  The appeal does not stay the execution of the sentence.  The sentencing judge may voluntarily give

---

[1] The order of the Appellate Division on indictment #78,602 read specifically, "ORDERED: that the judgment imposing said sentence be amended by substituting for said sentence a sentence to the M.C.I., Walpole, for a term of not more than twelve years and not less than eight . . . the term to be computed from the time when the appealed sentence commenced its operation.  Defendant is ordered to be resentenced accordingly."

[2] Amendments to c. 278, §§ 28A–28D, by St. 1968, c. 666, approved July 18, 1968, were not in effect when the Appellate Division acted in this case, and in any event they do not affect the decision in this case.

the Appellate Division a statement of his reasons for the sentence, and he is required to make such a statement if requested to do so by the division. He is forbidden to "sit or act on an appeal from a sentence imposed by him." § 28A.

Upon appeal, the Appellate Division has "jurisdiction to consider the appeal with or without a hearing, review the judgment so far as it relates to the sentence imposed and also any other sentence imposed when the sentence appealed from was imposed, notwithstanding the partial execution of any such sentence, and shall have jurisdiction to amend the judgment by ordering substituted therefor a different appropriate sentence or sentences or any other disposition of the case which could have been made at the time of the imposition of the sentence or sentences under review, but no sentence shall be increased without giving the defendant an opportunity to be heard. If the appellate division decides that the original sentence or sentences should stand, it shall dismiss the appeal. Its decision shall be final." § 28B. "Time served on a sentence appealed from shall be deemed to have been served on a substituted sentence." § 28C.

The petitioner contends that the procedure which culminated in a longer sentence being imposed upon him by the Appellate Division subjected him to double jeopardy in violation of the Fifth and Fourteenth Amendments of the United States Constitution. He argues alternatively that the increased sentence imposed upon him violates his right to due process of law under the Fourteenth Amendment in that no reasons were given on the record for this increase. The latter argument is based on the holding in *North Carolina* v. *Pearce*, 395 U. S. 711, decided June 23, 1969, which he contends should be applied retrospectively.

1. We turn first to the petitioner's argument that the Appellate Division procedure has placed him in double jeopardy. As recently as 1962, we decided that an increase in sentence by the Appellate Division did not constitute double jeopardy under the United States Constitution. *Hicks* v. *Commonwealth*, 345 Mass. 89, 91, cert. den. 374

Walsh *v.* Commonwealth.

U. S. 839. The conclusion was based on the reasoning "that a defendant can be tried a second time for an offence when his prior conviction for that offence has been set aside on his appeal . . . [citing cases]. Had the petitioner been convicted and sentenced and if on his appeal the conviction had been reversed, a subsequent conviction followed by a longer sentence than the one initially imposed would not be objectionable. We are of opinion that when a convicted defendant resorts to the statutory procedure prescribed by §§ 28A–28D for review of a sentence he assumes the same risks inherent in an appeal from a conviction."

We believe that this analogy is still appropriate and that our conclusion in the *Hicks* case is still correct. Our opinion is bolstered by the very case which the petitioner cites as raising doubts about the validity of our analogy in the *Hicks* case. *North Carolina* v. *Pearce*, 395 U. S. 711, 719–721.[3] There it was held that the imposition of a longer sentence upon reconviction after a successful appeal does not violate the double jeopardy clause. The court reasoned at p. 721, "[T]he original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. . . . [S]o far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate *has* been wiped clean. The conviction *has* been set aside, and the unexpired portion of the original sentence will never be served. A new trial may result in an acquittal. But if it does result in a conviction, we cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question. To hold to the contrary would be to cast doubt upon the whole validity of the basic principle enunciated in *United States* v. *Ball*, . . . [163 U. S. 662], and upon the unbroken line of decisions that have followed

---

[3] The court's statement at p. 722 that it was not dealing "with increases in existing sentences, but with the imposition of wholly new sentences after wholly new trials," it should be noted, was not made in this context but in the court's discussion of possible violation of the due process clause. Thus, we think it has no bearing on this issue.

that principle for almost 75 years. We think those decisions are entirely sound, and we decline to depart from the concept they reflect."

This statement fairly describes the status of the petitioner before the Appellate Division. It is only at a defendant's request that the Appellate Division acts. The portion of a sentence served at the time of the Appellate Division's decision is deducted from the time to be served under the substituted sentence.

Other earlier Federal decisions concerning the double jeopardy clause, held applicable to State criminal proceedings in *Benton* v. *Maryland*, 395 U. S. 784, and relied on by the petitioner, do not suggest that a different conclusion is in order on the facts before us. *Ex Parte Lange*, 18 Wall. 163. *United States* v. *Benz*, 282 U. S. 304. *Green* v. *United States*, 355 U. S. 184, 193. Finally we note that in proceedings under a similar Connecticut statute, 51 Conn. Gen. Sts. § 51–194–§ 51–197, "[t]he jeopardy, so far as the sentence is concerned, is a single continuing one, and any change in the sentence results from the sentenced person's own voluntary act." *Kohlfuss* v. *Warden*, 149 Conn. 692, 697–698, cert. den. 371 U. S. 928.

2. The petitioner argues that his right to due process of law was violated when the Appellate Division increased his sentence without enunciating the reasons for so doing. The argument is based on the new constitutional rule claimed to have been formulated in *North Carolina* v. *Pearce*, 395 U. S. 711. There the Supreme Court held that the due process clause precludes the imposition of a harsher sentence upon reconviction after a successful appeal "for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside" (pages 723–724). It "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial" (page 725). To discourage, if not eliminate entirely, this motivation in resentencing, the court established the rule that if a harsher sentence is imposed upon

reconviction, "[T]he reasons for . . . doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal" (page 726).

It is not clear from the court's opinion whether the same judges who had sentenced the two defendants originally resentenced them after reconviction. Thus, we are not sure whether the court was concerned about the vindictiveness of particular judges or about the possibility of vindictiveness inherent in appellate procedure generally. In the Appellate Division procedure the possibility that vindictiveness of the sentencing judge could affect the ultimate sentence is totally eliminated by statute. He may not sit as a member of the Appellate Division on a case in which he did the original sentencing. § 28A.

A study of the results of Appellate Division action shows that it is highly unlikely that any person has been or will be penalized by reason of appealing the sentence imposed by the trial court. The statistical reports on appeals to the Appellate Division for the period of fourteen years ending June 30, 1969,[4] show a total of 4,201 appeals taken.

---

[4] The Work of the Appellate Division, July 1, 1955, to June 30, 1969, is shown on the accompanying chart.

| Period: | 7-1-55 to 6-30-64 | 7-1-64 to 6-30-65 | 7-1-65 to 6-30-66 | 7-1-66 to 6-30-67 | 7-1-67 to 6-30-68 | 7-1-68 to 6-30-69 | 14 year total to 6-30-69 |
|---|---|---|---|---|---|---|---|
| *Appeals Entered* | 2660 | 309 | 368 | 484 | 571 | 613 | 4,201* |
| *Disposition* | | | | | | | |
| Appeals withdrawn | 880 | 117 | 113 | 107 | 163 | 264 | 1644 |
| Appeals dismissed | 1366 | 89 | 55 | 57 | 155 | 170 | 1892 |
| Sentences reduced | 311 | 14 | 11 | 25 | 8 | 26 | 395 |
| Sentences increased | 55 | 6 | 2 | 2 | 11 | 11 | 87 |
| Appeals pending | 30 | 72 | 179 | 290 | 233 | 139 | 139 |
| Appeals moot | 18 | 11 | 8 | 3 | 1 | 3 | 44 |
| | | | | | | | 4,201 |

Since July 1, 1967, the statistics have been compiled in terms of sentences, not number of defendants. Prior to that date the figures represent the number of defendants, so there may have been more sentences appealed than the figures suggest. These figures were supplied by the office of the clerk of the Appellate Division.

* Cases not disposed of at the end of any one year are carried over to the next year. Thus, the total figures for appeals entered during the fourteen year period, 4,201, is not the sum of the figures in the preceding columns representing appeals entered for given years.

The Appellate Division increased the sentences in only eighty-seven cases representing about 2.07% of the total appeals; and it reduced the sentences in 395 cases representing about 9.42% of the total appeals. The remainder of the appeals were either dismissed without change in sentence, withdrawn by the appellants, declared moot, or were still pending at the end of the year entered. This record of increase in sentence in an average of six cases per year out of an average total of about 300 appeals per year does not support a claim that the ultimate sentences are influenced by vindictiveness, or that the appellants are being penalized solely because they have appealed. This statistical and statutory record shows that Appellate Division proceedings in this Commonwealth have not been influenced by vindictiveness. Moreover in the petitioner's case there is no allegation or evidence that his sentence was increased because of this factor. This latter fact may be dispositive of the issue, although we do not decide it on that ground alone. Since oral argument in this case, the Supreme Court in a per curiam decision announced that certiorari had been improvidently granted in *Moon* v. *Maryland*, 398 U. S. 319. The court had originally granted the writ for consideration of the issue whether the *Pearce* rule should be applied retrospectively. In dismissing the writ the court said, "As an appendix to its brief, the respondent has filed an affidavit of the judge who presided at the second trial, setting out in detail the reasons he imposed the 20-year prison sentence. Those reasons clearly include 'objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.' *But the dispositive development is that counsel for the petitioner has now made clear that there is no claim in this case that the due process standard of Pearce was violated. As counsel forthrightly stated in the course of oral argument, 'I have never contended that Judge Pugh was vindictive'*" (emphasis supplied). This italicized language may mean that there must be at least a specific claim and perhaps some supporting evidence that vindictiveness motivated the

Walsh *v.* Commonwealth.

judge in imposing the harsher sentence before a court must consider this due process claim. To the degree that it does mean that, it supports our conclusion that in this case there was no violation of the due process clause.

We note finally that the *Pearce* rule does not seem suited to Appellate Division proceedings. It does not permit consideration of any factors but the defendant's conduct subsequent to the first trial. Such a rule would seriously hamper the work of the Appellate Division because it would limit it to the brief period that the defendant has been serving the sentence in the State prison or a reformatory awaiting hearing on the appeal. Moreover, the rule would preclude consideration of the very factor which the Appellate Division was established to consider: whether a particular defendant's sentence is excessively short or long compared to other defendants' sentences for the same or similar offences. Since the Supreme Court was not considering this procedure, we do not believe that it meant the *Pearce* rule to apply to it. We note that for similar reasons at least one Federal appellate court has refused to apply the *Pearce* rule to the imposition of a harsher sentence than that imposed by a State District Court after a trial de novo in a State Superior Court. *Lemieux* v. *Robbins*, 414 F. 2d 353 (1st Cir.). Cf. *Torrance* v. *Henry*, 304 F. Supp. 725 (E.D. N.C.).

We hold that neither the double jeopardy clause of the Fifth Amendment nor the due process clause of the Fourteenth Amendment was violated either by increasing the petitioner's sentence or by increasing it without stating the reasons therefor. Thus, we need not consider his arguments concerning retrospective application of our decision.

*Judgment affirmed.*