James M. WALSH, et al., Petitioners, Appellants,

v.

Philip J. PICARD, Superintendent, etc., Respondent, Appellee.

Nos. 71–1127, 71–1128, 71–1143–1145.

United States Court of Appeals, First Circuit.

Heard June 9, 1971.

Decided July 29, 1971.

---

John C. Cratsley, Cambridge, Mass., with whom Paul J. Driscoll, Edelmiro Martinez, Jr., Boston, Mass., and Jonathon Brant were on brief, for appellants.

Jeremiah O'Sullivan, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from the dismissal of a petition for habeas corpus brought by a state prisoner, Walsh, whose sentence was increased by the Appellate Division of the Superior Court. The Appellate Division is authorized to review sentences on the appeal of a defendant, and to diminish, affirm, or, after hearing, increase the sentence. Mass.G.L. c. 278 § 28A–D. There is no statutory requirement that the reasons for the decision be stated.[1] Petitioner, hereafter defendant, asserts that the double jeopardy clause bars the Appellate Division from increasing his sentence. Alternatively, he contends that the court should have been required to state the reasons for its decision. He has exhausted his state court remedies; the Massachusetts Supreme Judicial Court has rejected both contentions.[2] Walsh v. Commonwealth, 1970 Mass. A.S. 1315, 260 N.E. 2d 911. We have indicated lack of acceptance of defendant's first, see Bryant v. Moore, 1 Cir., 1971, 438 F.2d 1230, 1231; Marano v. United States, 1 Cir., 1967, 374 F.2d 583, 585 n. 2, but have not before considered his second contention.

Defendant asserts that the Massachusetts practice constitutes double jeopardy, in that it unconstitutionally penalizes a defendant for taking an appeal. We believe this a misconception. Some history, however, is needed to put defendant's claim in proper perspective.

In Marano v. United States, supra, we introduced the rule that a defendant who won a new trial on appeal could not have his sentence increased, if he were again convicted, except for matters that had occurred after the first trial. We based our decision upon considerations of due process, stating that to hold otherwise would unduly chill the defendant's right of appeal. In Patton v. State of North Carolina, 4 Cir., 1967, 381 F.2d 636, cert. denied 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871, Chief Judge Sobeloff placed a more restrictive constitutional limitation upon the state—the sentence could not be increased following

1. Comparable statutes exist in three other states. Alaska Stat., § 12.55.120 (Supp. 1969); Me.Rev.Stat.Ann. Tit. 15, §§ 2141–44 (Supp.1970); Md.Ann.Code Art. 26, §§ 132–38 (1966).

2. There are four companion cases; Thompson v. Picard, Santiago v. Picard, Berrios v. Picard, and Ortiz v. Picard. In none of these has the petitioner exhausted his state court remedies. We agree, however, that the state court's decision in the *Walsh* case excuses them from further pursuing the issue in the Massachusetts courts. Pratt v. State of Maine, 1 Cir., 1969, 408 F.2d 311.

a retrial under any circumstance. In addition to due process the court invoked principles of equal protection and double jeopardy, each of which, it stated, compelled its result.

The *Patton* rule has not stood. In North Carolina v. Pearce, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, the Court rejected, almost summarily, the defendant's contentions that double jeopardy and equal protection prevented the imposition of a more severe sentence following a retrial. It held, however, that the due process clause limits the right of a state to increase the sentence, announcing the same rule that we had adopted in *Marano*. It said:

"[E]ven if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law." (724, 89 S.Ct. at 2080)

"Due process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." (725, 89 S.Ct. at 2080)

*Pearce* thus reaffirms the American principle that the double jeopardy clause does not absolutely bar all proceedings which could literally be said to place the defendant twice in jeopardy. *See* United States v. Tateo, 1964, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448. A state may condition a right to appeal on submission to retrial so long as that condition does not unreasonably fetter the right to an appeal.

The Massachusetts procedure here challenged should be tested by this same standard of reasonableness. *See also* Lemieux v. Robbins, 1 Cir., 1969, 414 F. 2d 353, 355, cert. denied 397 U.S. 1017, 90 S.Ct. 1247, 25 L.Ed.2d 432. *As in Pearce*, the Massachusetts procedure does not permit the state to reopen the question of sentence on its own initia-

tive. Were it to do so, it would of course violate the proscription against double jeopardy. *See* United States v. Benz, 1931, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (dicta); Frankel v. United States, 6 Cir., 1942, 131 F.2d 756. Instead, Massachusetts simply conditions a defendant's right to appeal the length of his sentence upon the state's having a corresponding right to establish that the sentence should be increased rather than diminished. Such a condition might constitute double jeopardy if it subjected the defendant to the dilemma of having to choose between staying in jail under an erroneous sentence for one offense and seeking a review with the accompanying risk of having his overall sentence increased. *See* Pugliese v. United States, 1 Cir., 1965, 353 F.2d 514. The *Pearce* rule was designed to alleviate a similar dilemma in the context of an appeal on the merits. The defendant in the instant case, however, faces no such dilemma. He attacks, not the validity of his sentence, but only its appropriateness. In a related context both this court, Lemieux v. Robbins, supra, and the Massachusetts court, Mann v. Commonwealth, 1971 Mass. A.S. 1027, 271 N.E.2d 331, have held that a state may provide as the only appeal from a district court conviction a trial de novo in the Superior Court in which all issues are decided as if there had been no prior proceeding. Though a defendant is generally entitled to the benefit of any mistake a trial judge may make in setting a sentence too low, it seems not unreasonable for a state to require that he surrender that benefit if he chooses to open up the issue.

While we do not think that, even per se, the Massachusetts procedure is constitutionally impermissible, it is even less so if one considers the benefits to the Commonwealth. A rule barring sentence increases might tend to jeopardize the very purposes for which the Appellate Division procedure was designed. *See generally* Eighteenth Report of the Judicial Conference (December 1942), Pub.Doc.No. 144, pp. 28–30. One of

these was to provide the Superior Courts with assistance in more accurate and generally uniform sentencing. If the Appellate Division could only reduce sentences, a Superior Court in doubt as to the appropriate sentence might tend to impose a too-long sentence, knowing that such a sentence could be reduced but that a sentence which was too short could not be increased. *Cf.* Lemieux v. Robbins, supra, 414 F.2d at 356; North Carolina v. Pearce, supra, 395 U.S. at 721–722 n. 18, 89 S.Ct. 2072.

Another purpose was, by reducing untoward disparities in sentence, to improve general prisoner morale. *See* E. Powers, Basic Structure of The Administration of Criminal Justice in Massachusetts (5th ed. 1968) pp. 64–65. The position urged by the defendant would lessen the ability of the system to attain this objective. An excessively short sentence is as disruptive as an excessively long one.

■ In sum, we find it constitutionally permissible to condition the grant of a defendant's appeal of the appropriateness of his sentence on the state's having a right to cross-appeal on the same matter.

■ Alternatively, defendant argues that if the Appellate Division may increase·a sentence, *Pearce* requires that the reasons be articulated. While as a matter of policy such a requirement might be thought desirable, we do not find that it is constitutionally dictated. The argument that as a matter of common law practice appellate courts normally do not reverse without stating reasons proves too much. It is true that appellate courts, passing upon substantive questions, usually write opinions, both to show the facts that they have in mind, and the principles that move them. Courts imposing sentences, however, normally do not. In order to impose this special obligation as constitutionally required upon a court which is not, like the federal district courts, subject to our general supervision, some real·loss to the litigant should be shown. We do not

think that the trial judge has had a different view of the appropriate sentence is enough to establish that the defendant suffers either substantive or procedural harm if the Appellate Division imposes sentence in the customary manner without stating reasons.

The Appellate Division is considering not a narrow issue, but the entire sentence de novo, by comparison with general sentencing practices, in the light of defendant's *character and total conduct*. Recitation of the court's findings and reasoning would be as difficult as in the *Pearce* situation it would be simple. More significantly, the need for recitation is less. Although we hesitate to draw comparisons, a trial court which has been reversed and then required to engage in a perhaps lengthy retrial, only to end up where it started, may find it difficult in the best of conscience not to feel some irritation towards the defendant. The likelihood that an appellate court hearing a brief appeal would feel vindictive seems to us far more remote. Moreover, North Carolina in *Pearce* provided an appeal from the resentencing, for which a record would be desirable. The Massachusetts statute does not permit a further appeal. We do not believe the state is required to give one. *Cf.* Rinaldi v. Yeager, 1966, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577. Correspondingly, we do not see why, as constitutional protection to the defendant, the court is required to give its reasons. Indeed, unless we are going to say there must be a further appeal, who is to say whether they are good enough?

Affirmed.

COFFIN, Circuit Judge (dissenting).

My difference with the court's opinion is confined to its dismissal of petitioner's claim that he is entitled, as a matter of due process, to a statement of the reasons which have led the Appellate Division to increase his sentence. The court does not distinguish this case from the case of a trial court's imposing sentence on a convicted defendant. If it is constitutionally permitted for a trial

court to impose sentence without a statement of reasons, the court believes that an appellate panel, charged with de novo review of a sentence, is also free from any responsibility to give reasons for its judgment.

In my view, however, there are such differences between the two situations as to require, as a matter of due process, an appellate sentence review panel of judges to articulate reasons for increases in sentences. This view is based on the institutional reason for being and appellate nature of such a panel. Although petitioner has urged the applicability of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), pointing to the alleged chilling effect on present and potential appellants by reason of lack of a knowledge basis to take a sensible risk of appeal, the possibility that a panel of Superior Court judges might be motivated by a desire to minimize appeals or vindicate colleagues, or the possibility that sentence increases might be based on impermissible considerations, I do not reach this issue. Nor would I confine the requirement of reasons, as *Pearce* does, to post-conviction conduct.[1]

In the first place, it is one thing not to require, as a matter of due process, a sentencing judge in the first instance, who cannot refrain from acting, to specify reasoning which led him to choose from the many options available—from probation to maximum fine and imprisonment.[2] An appellate review panel however, can and most often does refuse to order a change in a sentence; but when it is so moved as to order an increase, it must be persuaded that some factor has not been taken fully into account. This observation sharpens when one reflects that the Appellate Division was established to consider a specific factor: "whether a particular defendant's sentence is excessively short or long compared to other defendants' sentences for the same or similar offences." Walsh v. Commonwealth, 1970 Mass.A.S. 1315, 1322, 260 N.E.2d 911, 916. It therefore seems entirely practicable to require articulation of the rationale for altering in severity the trial judges' sentence. As *Walsh* observed, at 1321, 260 N.E.2d at 915, a fourteen year record reveals an average of only 6 sentence increases in some 300 appeals per year. Moreover, the fact that other states require a statement of reasons for an increase supports the workability of the requirement.[3]

In the second place, the entire purpose of the appellate review system would seem to be frustrated if the result were to be "only more judges having another bite at the same apple", 1963 Annual Survey of Massachusetts Law, 1963, Ch. 11 "Criminal Law, Procedure and Administration", Sanford J. Fox, p. 127. There would be no possibility of developing principles on a case-by-case basis which would not only advance the system's purpose of consistency, but would inform the legislature, give guidance to trial judges, state's attorneys, defense counsel, and even boards of parole.[4]

1. The Massachusetts Supreme Judicial Court, as well as the district court, was understandably concerned that literal application of *Pearce* was not suited to Appellate Division proceedings. Walsh v. Commonwealth, 1970 Mass.A.S. 1315, 1322, 260 N.E.2d 911. I quite agree that these proceedings should not be so circumscribed.

2. I note, however, that, by statute, the sentencing judge must, if requested by the Appellate Division, supply a statement of reasons for imposing sentence. Mass.G.L. c. 278 § 28B.

3. *E. g.*, 51 Conn.Gen.Stats. §§ 51–196; Mont.Rev.Code Ann. § 95–2503, as amended by § 1, Ch. 196, L.1967.

4. For a discussion of the shortcomings and potential of the implicit policy-making function of the sentence Review Division in Connecticut, *see* Appellate Review of Primary Sentencing Decisions: A Connecticut Case Study, 69 Yale L.J. 1453, 1466–1477 (1960). *See also*, Halperin, Sentence Review in Maine: Comparisons and Comments, 18 Maine L.Rev. 133, 153 (1966).

Finally, and most important, I would conclude that an articulation of reasons by the Appellate Division is constitutionally compelled. I know of no other appellate judicial body that ever reverses the decisions of the initial decision-maker without stating its reasons. It is familiar doctrine that the decision of a trial court carries a presumption of correctness. When we affirm a ruling below without opinion, we are impliedly saying that the presumption has not been overcome. A corollary of that presumption is the principle that reasons must be given if a court acts contrary to that presumption.

The most obvious support for this principle is that reasons are essential to enable further review to take place. Here, of course, there is no further statutory right of appeal, only such review as habeas corpus might justify in the extraordinary case. This very fact explains the absence of authorities directly on point. But it seems to me that, precisely because there is no right to appeal, due process requires the minimum internal check of an expressed rationale.

The Fourteenth Amendment is violated by a state procedure that "is an arbitrary and unreasonable requirement, so inconsistent with established modes of administering justice that it amounts to a denial of due process." Ownbey v. Morgan, 256 U.S. 94, 103, 41 S.Ct. 433, 435, 65 L.Ed. 837 (1921). When state officials are permitted to act in an unrestrained way, they offend due process. Yick Wo v. Hopkins, 118 U.S. 356, 6 S. Ct. 1064, 30 L.Ed. 220 (1886). Although state officials may in fact exercise that discretion in a cautious and wise manner, without some sort of restraint, whether it be controlling legislative principle or required explanations after the fact, a court can only assume any action taken is arbitrary. Cf. Kunz v. New York, 340 U.S. 290, 293, 71 S.Ct. 312, 95 L.Ed. 280 (1951). The very antithesis of due process is an arbitrary decision; the last place where we should expect arbitrariness in decision-making is final judicial appellate review.

The only check on an appeals court not subject to further review, which will insure that its decisions are based on reason and not caprice, is a requirement that the court explain its decisions. Without such an explanation, there is no way of knowing whether the court performed its primary function of rationally evaluating the facts and arguments put before it. Cf. Capital Transit Co. v. Public Utilities Comm'n., 93 U.S.App.D. C. 194, 213 F.2d 176, 187 (1954) (Stephens, C. J., concurring), cert. denied, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643 (1954). Such a concern to insure the rule of reason and law, and not of unaccountable individuals, seems to me to compel the conclusion that all appellate decisions which so adversely affect an individual as an increase in sentence and for which no reasons are given are on their face arbitrary.