BRUCE GAVIN vs. COMMONWEALTH
(and two companion cases[1]).

Suffolk. November 6, 1974. — April 4, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Sentence, Appellate Division. *Constitutional Law,* Due process of law.

The guaranty of "an opportunity to be heard" afforded to an appellant to the Appellate Division of the Superior Court by G. L. c. 278, § 28B, does not imply a statement of reasons by the Appellate Division. [336]

The constitutional requirement of *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), of a statement of reasons for an increase of sentence in a criminal case is inapplicable to the resentencing procedure under G. L. c. 278, §§ 28A-28D. [336-339]

A statement of reasons by the Appellate Division of the Superior Court for an increase in sentence upon an appeal under G. L. c. 278, §§ 28A-28D, is not required as a matter of procedural due process of law. [339-343]

THREE PETITIONS for writs of error filed in the Supreme Judicial Court for the county of Suffolk on November 29, 1973, April 29, 1974, and May 14, 1974, respectively.

Two of the cases were reserved and reported by *Hennessey,* J., and the third was reserved and reported by *Braucher,* J.

*Paula W. Gold (Richard Shapiro* with her) for the petitioner Gavin.

*Bernard Grossberg,* for the petitioners Jarvi and Heathman, was present but did not argue, those petitioners having been given leave of court to submit

---

[1] Terry O. Jarvi *vs.* Commonwealth. Roscoe Owen Heathman *vs.* Commonwealth.

their cases on the brief filed in behalf of the petitioner
Gavin.

*Robert H. Quinn,* Attorney General (*Sarah L. Wasserman,* Assistant Attorney General, with him) for the
Commonwealth.

KAPLAN, J.    These three cases launch a renewed attack
on one feature of the statute, G. L. c. 278, §§ 28A-28D,
laying down a procedure for appellate review of certain
criminal sentences.    When there is a sentence to the State
prison[2] or a sentence to the reformatory for women for a
term of more than five years, the person sentenced is
promptly notified of his right to appeal for a review of
the sentence, and he may lodge such an appeal in the
Appellate Division of the Superior Court.    This division
consists of three judges of the court designated from time
to time by its chief justice, but a judge may not sit in
review of a sentence he has himself imposed as trial
judge.    To aid in the appeal, the Appellate Division may
require the production of any records, documents,
exhibits, or other things connected with the proceedings;
and the trial judge may, and if requested by the division
shall, transmit to the division a statement of his reasons
for having imposed the particular sentence.    The division
may consider an appeal with or without affording a
hearing, but "no sentence shall be increased without
giving the defendant an opportunity to be heard."
§ 28B.[3]    The division's jurisdiction is limited to a review

---

[2] "[E]xcept in any case in which a different sentence could not
have been imposed."   § 28A.

[3] Part at least of the purpose of permitting increase of sentence is to
discourage frivolous appeals.   Cf. *Commonwealth* v. *Morrow,* 363
Mass. 601, 610-611 (1973).

There has been extensive controversy among experts in the field as
to whether appellate jurisdiction in review of sentences (in the several
jurisdictions where it exists) should include the power to increase as
well as to decrease sentences.    The arguments are summarized in the
Supplement, "Amendments Recommended by the Special Committee
on Minimum Standards for the Administration of Criminal Justice,"

of the judgment only so far as it relates to the sentence imposed;[4] it may let that part of the judgment stand or amend it by substituting "a different appropriate sentence . . . or any other disposition of the case which could have been made at the time of the imposition of the sentence . . . under review . . .." The decision of the Appellate Division "shall be final." § 28B. The Superior Court is required to establish forms for appeal under the statute (which it has done) and is given a general rule making power thereunder (which it has left largely unexercised).[5] Our court has decided that the person appealing is entitled to counsel, appointed if necessary, to assist him both in deciding whether to appeal and in appearing and presenting his case before the Appellate Division, *Croteau, petitioner*, 353 Mass. 736 (1968); and although our decision was rendered in respect to an appeal resulting in an increase of sentence, it is understood that a hearing is held and counsel are made available upon all appeals other than those voluntarily withdrawn.

Attack has naturally centered on the procedure in relation to increase of sentence. Decisions in this and other forums have held that an increase on appeal is not

to A. B. A., Standards Relating to Appellate Review of Sentences (Approved Draft 1968). The Advisory Committee had recommended against the power to increase, but the Special Committee disagreed, and the latter view was adopted by the House of Delegates by a vote of ninety-five to seventy-five.

Bills were introduced in our Legislature in the 1973 and 1974 sessions to amend G. L. c. 278, § 28B, to eliminate the power of the Appellate Division to increase sentences, but neither bill made substantial progress. See 1973 Senate Doc. No. 567 and 1974 Senate Doc. No. 178.

[4] Ordinary appellate review to correct errors of law that may have been committed by the judge at trial proceeds independently of the review of sentence.

[5] "The superior court shall by rule establish forms for appeals hereunder and may by rule make such other regulations of procedure relative thereto, consistent with law, as justice may require." § 28B. See Rule 64 of the Superior Court (1974).

vulnerable to attack on grounds of "double jeopardy" or lack of "equal protection." *Hicks* v. *Commonwealth,* 345 Mass. 89, 90-91 (1962), cert. den. 374 U. S. 839 (1963). *Walsh* v. *Commonwealth,* 358 Mass. 193, 196 (1970), habeas corpus den. sub nom. *Walsh* v. *Picard,* 446 F. 2d 1209, 1210-1212 (1st Cir. 1971), cert. den. 407 U. S. 921 (1972). *Mann* v. *Commonwealth,* 359 Mass. 661, 662-665 (1971). *Robinson* v. *Warden,* 455 F. 2d 1172, 1174-1176 (4th Cir. 1972). See *North Carolina* v. *Pearce,* 395 U. S. 711, 717-726 (1969). The statutory procedure, at least in its general outline, was upheld in the *Hicks* case, *supra,* although without reliance on the Constitution.[6] See *Kohlfuss* v. *Warden,* 149 Conn. 692 (1962), cert. den. 371 U. S. 928 (1962). And the specific objection, taken on due process grounds, that an increase of sentence must be accompanied by a statement of reasons on the part of the Appellate Division — there is no such explicit requirement in the statute — was rejected by this court and by the Court of Appeals for the First Circuit (a two to one decision) in the *Walsh* cases, *supra* (358 Mass. at 198-201 [1970]; 446 F. 2d at 1212 [1971]). See also *State* v. *Henrich,* 162 Mont. 114, 118 (1973).

The present cases attack again the failure of the Appellate Division to give a statement of reasons for increase of sentence. The facts may be recited briefly. On his pleas of guilty Gavin was sentenced by the trial judge on January 20, 1972, to a term of five to seven years in State prison on an indictment for armed robbery (masked) and to a like term on an indictment for assault and robbery (masked), the terms to run concurrently. He appealed the sentences and appeared with counsel and was heard by the Appellate Division on November 1, 1972, in a proceeding which customarily takes between fifteen and thirty minutes and of which no stenographic record is

---

[6] See the comment on the *Hicks* case by Professor Sanford J. Fox in 1963 Ann. Surv. of Mass. Law, § 11.5, p. 126.

kept.   The division modified the judgment by ordering
the two sentences to be served consecutively rather than
concurrently, with effects, among other things, on the
date of Gavin's eligibility for discretionary early parole.
The division did not state reasons for the modification
(nor, so far as appears, did the appellant request it to do
so).   The other two cases are similar in outline.   In
Jarvi's case he pleaded guilty upon indictments for armed
robbery and for assault and battery with a dangerous
weapon and was sentenced to concurrent terms of five to
fifteen and five to ten years at Massachusetts Correction-
al Institution at Walpole; on appeal the sentences were
increased to eight to fifteen and eight to ten years to be
served concurrently.   Heathman was found guilty by a
jury upon an indictment for unarmed robbery and was
sentenced by the trial judge to a term of four to six years
at Massachusetts Correctional Institution at Walpole; the
Appellate Division increased the sentence to seven to ten
years.   Each case is here on reservation and report,
without decision, by a Justice of this court, and the
respective records consist of a petition for writ of error
with assignments of error, return, demurrer, answer, and
statement of agreed facts (or equivalent).   The issues
being in substance the same, the cases were consolidated
for purpose of argument.

Although the appellants' target is an old one, some of
their ammunition is new.   They argue that the statute,
properly interpreted, requires that a statement of reasons
be given when a sentence is increased, and that, apart
from this question of statutory interpretation, due process
demands such a statement.   This latter constitutional
argument is said to find support in the recent develop-
ment of the doctrine of *North Carolina* v. *Pearce,* 395
U. S. 711 (1969), or in the recent elaboration of
*Goldberg* v. *Kelly,* 397 U. S. 254 (1970).   We believe the
arguments from the statute and the *Pearce* case fail.   We
think the contention based on the *Goldberg* case also
fails, although the issue is closer.   In our view, therefore,

the Appellate Division is not required either by the statute or the Constitution to give statements of reasons. We note, however, that the question is one that can be considered by the Superior Court in the first instance as a possible subject for rule making.

1. The appellants argue that when the statute (§ 28B) guarantees to appellants "an opportunity to be heard" in case of an increase of sentence, a statement of reasons by the deciding body is necessarily implied as a matter of sound statutory construction.   This contention is not in accord with the practice since the inauguration of the Appellate Division in 1943, which is itself indicative of meaning, and it is not buttressed by anything more than an enumeration of the claimed advantages of providing such a statement, which does not help much in fixing the interpretation of the words used in the statute.   It seems to us that in ordinary parlance and practical experience "opportunity to be heard" does not comprehend any particular understanding about the style of decision. Compare *Dorszynski* v. *United States,* 418 U. S. 424 (1974).   There a provision of the Federal Youth Corrections Act, 18 U. S. C. § 5010 (d) (1970), stated that " [i]f the court shall find that the youth offender will not derive benefit from treatment under . . . [certain subsections]," the court might sentence the offender under other penalty provisions.   The quoted words were held by a majority of the Supreme Court to require the prescribed finding by the court, but not a statement of the reasons therefor.   When, in the *Croteau* case, we held that there was a right to counsel, we did not find the right implied in the statutory expression "opportunity to be heard," although such an implication might be perhaps more plausible than the one now urged; rather we found the right to be accorded by the Constitution as a supplement, so to speak, to the text of the statute.

2. Next, the appellants base an argument on *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), a case considered and distinguished in the *Walsh* cases, but now

again urged upon us with a somewhat different emphasis. The *Pearce* case started from the agreed proposition that a criminal sentence actuated by a judge's vindictiveness is a sentence without due process. When a criminal conviction is upset on appeal or by collateral attack for error of the trial judge, and the defendant is retried, and again convicted, and a sentence is then imposed upon him by the judge more severe than that originally set, there may be possible ground for suspicion — so the Supreme Court thought — that vindictiveness, pique at the "wasted" time and effort or the like, even though subconscious, may in some degree have motivated the resentence. Yet such motivation would ordinarily be hard to establish by positive proof. To prevent injustice to the individual or an improper "chilling" effect for the future on prospective appellants, the *Pearce* case in the name of due process requires the judge at the time of the stepped-up resentence to make express findings directed to absolving himself of the possible reproach. He is to make findings demonstrating that it is some tangible set of occurrences following the original sentence that justifies the harsher resentence.[7] We have given scope to the *Pearce* case to the full extent of its rationale. See *McHoul* v. *Commonwealth,* 365 Mass. 465, 470-472 (1974). But in the *Walsh* cases our court as well as the Court of Appeals thought the *Pearce* case inapplicable to the resentencing procedure under §§ 28A-28D. The actual existence of a motive of vindictiveness or other malevolence on the part of the judges of the Appellate Division

---

[7] "[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U. S. at 726 (1969).

was not even hinted at in the *Walsh* cases, any more than it is in the present cases. Nor did the requirement of the *Pearce* case seem necessary or appropriate as a "prophylactic" measure. Quite apart from the fact that § 28A bars the original sentencing judge from participating as a member of the Appellate Division in the reexamination of his own judgments, it is hard to see in the routine reviews of sentences under our statute any likely chances for the arousal of base passions of retaliation in any panel member that suggest a need for anything on the order of the *Pearce* type of prophylactic statement. As also indicated in our *Walsh* decision, the form of statement required by the *Pearce* case is out of keeping with the §§ 28A-28D procedure which is simply for the review of the original sentence. The fact that few sentences have been in fact increased on such review over the years, when compared with the number of sentences reviewed or with the number of sentences reduced, also strongly suggests to us now, as it did in the *Walsh* case, that *Pearce* statements have no proper place even if they could be altered in their form to suit the occasion.[8]

---

[8] Figures for the period July 1, 1955, to June 30, 1969, appear at 358 Mass. 199, fn. 4 (1970). An extension of the figures, supplied by the clerk of the Appellate Division, follows. The figures are in terms of number of sentences, not number of defendants.

| Period: | 7-1-69 to 6-30-70 | 7-1-70 to 6-30-71 | 7-1-71 to 6-30-72 | 7-1-72 to 6-30-73 | 7-1-73 to 6-30-74 | Total |
|---|---|---|---|---|---|---|
| Appeals Entered | 442 | 402 | 500 | 503 | 496 | 2,343 |
| Dispositions | | | | | | |
| Appeals Withdrawn | 220 | 176 | 138 | 401 | 140 | 1,075 |
| Appeals Dismissed | 90 | 52 | 81 | 322 | 232 | 777 |
| Sentences Reduced | 17 | 11 | 25 | 57 | 34 | 144 |
| Sentences Increased | 0 | 3 | 3 | 7 | 1 | 14 |
| Appeals Moot | 11 | 7 | 13 | 9 | 4 | 44 |
| Appeals Pending | 243 | 413 | 653 | 374 | 459 | 459 |

The appellants say that the *Pearce* doctrine as later developed by the Supreme Court calls for measures against "institutional" or systemic bias. See *Chaffin* v. *Stynchcombe*, 412 U. S. 17, 27 (1973); *Michigan* v. *Payne*, 412 U. S. 47, 53 (1973). But this hardly adds a new element, for the *Pearce* formula was directed to subconscious animus which could be generated as well by institutional forms as by personal psychology; in the *Pearce* case, indeed, it was a second judge, not the original trial judge, who imposed the harsher sentence after retrial.[9] If we are to speak of "institutional" arrangements, appellate resentencing under our statute bears some (although admittedly not exact) analogy to change of sentence after "de novo" trial in a "two tier" trial system, and it was in just such a case that the Supreme Court held that the perils to which the *Pearce* case was directed did not exist, or did not exist to the degree that required prophylaxis as a constitutional matter. *Colten* v. *Kentucky*, 407 U. S. 104 (1972). We had anticipated that result in *Mann* v. *Commonwealth*, 359 Mass. 661 (1971). See *Chaffin* v. *Stynchcombe*, 412 U. S. 17 (1973). Cf. *Blackledge* v. *Perry*, 417 U. S. 21 (1974).

3. If a statement of the *Pearce* type is not constitutionally required here to rebut any suggestion of judicial vindictiveness, then the appellants turn to another and broader due process contention as a basis for their demand for a statement of reasons. *Goldberg* v. *Kelly*, 397 U. S. 254 (1970), had been but recently decided when the *Walsh* cases were handed down and its implications had not yet been explored. *Goldberg* speaks of the process minimally required by the Constitution when an individual confronts the government in a matter of consequence. The process "due" is variable, a resultant of the forces intrinsic to particular situations, as

---

[9] As pointed out by Mr. Justice Marshall, dissenting in *Chaffin* v. *Stynchcombe*, 412 U. S. at 41, fn. 4 (1973).

illustrated by the court's remark that "[t]he extent to which procedural due process must be afforded . . . is influenced by the extent to which . . . [the person] may be 'condemned to suffer grievous loss,' . . . and depends upon whether the . . . [person's] interest in avoiding that loss outweighs the governmental interest in summary adjudication." 397 U. S. at 262-263 (1970).[10] The *Goldberg* case has had ramifications not only on the civil but the criminal side. See, e.g., *Morrissey* v. *Brewer*, 408 U. S. 471 (1972) (revocation of parole); *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973) (revocation of probation); *Wolff* v. *McDonnell*, 418 U. S. 539 (1974) (internal prison procedures); *United States ex rel. Johnson* v. *Chairman of N. Y. State Bd. of Parole*, 500 F. 2d 925 (2d Cir. 1974), vacated and remanded for dismissal as moot sub nom. *Regan* v. *Johnson*, 419 U. S. 1015 (1974) (denial of parole). An example of the influence of the *Goldberg* case in our court is *Myers* v. *Commonwealth*, 363 Mass. 843, 854-856 (1973), where we referred to *Goldberg* in spelling out certain procedural safeguards for "probable cause" hearings in the District Courts preliminary to binding over for trial in the Superior Court. Cf. *Gerstein* v. *Pugh*, 420 U. S. 103 (1975).

In the present case we are surely dealing with a significant interest of the individual. In weighing his minimal entitlement to procedural protection, we must note that at present, by a combination of the statute and our *Croteau* decision, he gets notice of his opportunity to appeal, help of counsel in deciding whether to appeal with its attendant risk, availability of a record and possible resort to the views of the trial judge, appearance before the tribunal with assistance of counsel, and

---

[10] Particular ingredients of due process pertinent to that case, involving termination of welfare assistance, were set out, see 397 U. S. at 266-271 (1970), including an official statement of reasons, but these were not invariants applicable to all situations. See also the listing in *Morrissey* v. *Brewer*, 408 U. S. 471, 489 (1972).

ultimate collegial rather than individual judgment. Does the constitutional minimum in the particular situation require, in addition, a statement of reasons by the tribunal? [11]

On the affirmative side, it may be suggested that the preparation of such a statement would provide a test for the judges themselves, and for the prisoner also, of the soundness of the judges' reasoning. Cf. *Commonwealth* v. *Brown*, 364 Mass. 471, 478 (1973). The statement would be some guaranty that the decision was not capricious or arbitrary, a safeguard perhaps especially needed if the decision to resentence is indeed "final." We can recognize that there is more than mere sentimental attractiveness in the idea that an explanation is "owed" to the prisoner on whom a harsher sentence has been imposed after he has pleaded for a reduction; if the explanation would not help materially in his rehabilitation, it would at least symbolize that he was being treated as a person rather than a cipher. A statement of reasons might usually be more easily written by the Appellate Division for revising a sentence than by the trial judge for imposing the original sentence, since the former would be a more focused analysis looking to correction of possible misjudgment embodied in the sentence reviewed rather than to the formation of an original judgment. See Eighteenth Report of the Judicial Council (December, 1942), Pub. Doc. No. 144, at 28-30. And in view of the figures above given, it cannot be said that a heavy administrative burden would be cast on the division by a requirement that it give reasons for increasing sentences.

On the other side, we may recall that the object of a particular enterprise furnishes a measure of the constitutional sufficiency of the procedure used. If our statutes

---

[11] The following discussion draws in part from the opinions in the *Walsh* cases although they were not addressed to the *Goldberg* decision as such.

provided fixed substantive rules as to the imposition or appellate review of sentences, then a statement of reasons could help to determine whether the rules were being followed or a given sentence was right. Whether or to what extent sentencing can or should be submitted to such substantive rules need not be debated here. The fact is that our sentencing conforms to the old and still conventional model without fixed rules (apart from those establishing durational or similar limits of sentences) that allows very wide discretion to the trial judge. Thus an explanatory statement at the time of sentencing would serve no sharp analytic purpose, and in all events it has not been required. See *Williams* v. *New York,* 337 U. S. 241, 252 (1949). Cf. *Dorszynski* v. *United States,* 418 U. S. 424 (1974). Appellate review under our statute has to some extent the character of an extension, without precise litigious formalities, of the trial judge's effort to attain a just sentence. Through the combined experience of its members, the Appellate Division may know better than the single judge what is the usual range of the sentences for the grade of offense; it may have less of a sense than the trial judge of the characteristics and potentialities of the individual; but discretion permeates decision making on both levels. And so it can be doubted that such distinctions as can be pointed to between the functions of the trial judge and the Appellate Division are such as to make a constitutional difference. We may add that a statement by the division would not here be designed to resolve issues of fact, for there is usually no dispute as to the record before the division pertinent to its review (cf. *Morrissey* v. *Brewer,* 408 U. S. 471, 479-480 [1972]); nor could the statement be expected to assist significantly in the disciplining or rehabilitation of the prisoner (cf. *Wolff* v. *McDonnell,* 418 U. S. 539, 564-565 [1974]); nor would it be calculated to put others in a position to review and correct the action of the division itself (cf. *United States ex rel. Johnson* v. *Chairman of N. Y. State Bd. of Parole,*

500 F. 2d 925, 929 [2d Cir. 1974], judgment vacated sub nom. *Regan* v. *Johnson,* 419 U. S. 1015 [1974]), since its action is, by the statute, "final." [12] If the inveterate habits of our judicial system as a whole bear on claims of constitutional right, then we must note that though appellate courts customarily — yet not invariably [13] — write something in justification of their modifications of decisions appealed from, our system by and large does not insist that judges explain all their consequential decisions; a great many remain wholly unexplained.

On the whole, weighing the nature of review by our Appellate Division, we believe the *Goldberg* case and decisions emanating from it do not oblige us to alter the constitutional position taken in the *Walsh* cases, although, as noted, the constitutional question cannot be considered free from doubt.

4. Although we are persuaded that the omission of the Appellate Division to state reasons for increase of sentence does not cause the procedure to fall below the minimal standard of fairness required by the Constitution, this does not preclude the question whether the practice should be changed in the interests of the "proper administration of criminal justice." *Commonwealth* v. *Martin,* 355 Mass. 296, 297 (1969). Cf. *Commonwealth* v. *Stewart,* 365 Mass. 99, 102-108 (1974). If an inquiry on this line is to be undertaken, it should in the first instance be done by the Superior Court with a view to possible rule making under § 28B. The Legislature appears indeed to have recognized in enacting § 28B that a rule making technique has advantages in a situation of this kind: it lends itself to an assessment of a range of

---

[12] Action on the part of the Appellate Division demonstrated to be so egregious, despite its fundamentally discretionary character, as to be illegal, could find a remedy; the question is whether the situation is such as constitutionally to require a statement in each case to help to reveal whether such egregious action has occurred.

[13] See, e.g., Rules of the United States Court of Appeals for the Second Circuit, Rule 0.23 (1973).

accumulated experience; if rules are decided upon, they can deal with practical problems of administration.[14]

Some of the arguments on either side of such an inquiry have been briefly sketched above. The judges of the Superior Court, including especially those who have served in the Appellate Division, have had a large experience that could be consulted. It may be noted that the practice of giving statements of reasons has in fact varied in the several jurisdictions that have appellate tribunals resembling our own for the review of sentences.[15] Reasoned suggestions have emerged in the last several years from the cogent debate on this among other aspects of the problem of sentencing. These are readily available in the literature and would deserve consideration.[16]

*Judgments affirmed.*

[14] See, e.g., fn. 15, second par., *infra*, about the problem of publishing all or some of the statements of reasons, if it be decided that statements shall be rendered.

[15] The relevant jurisdictions having appellate review of sentences by a special tribunal, apart from ordinary review of the trial merits, stand as follows. Maine does not require a statement by the tribunal, but trial judges are required to give reasons at original sentencing. Connecticut, Montana, and Maryland (the latter, apparently, by rule) require statements of reasons in all cases appealed. Conn. Gen. Sts. Anno. Tit. 51, §§ 51-194 to 51-196 (1958 and Supp. 1975). Maine Rev. Sts. Anno. Tit. 15, §§ 2141-2144 (Supp. 1974). Md. Anno. Code, art. 27, §§ 645JA-645JG (1974 Cum. Supp.), and Rule 762 (1971 and Supp. 1974). Mont. Rev. Codes, §§ 95-2501-2504 (1969).

In Connecticut there is provision for publishing those statements of reasons that the Reporter considers will be useful as precedents and will serve the public interest.

The A. B. A. Standards, fn. 3, *supra*, which recommend that review of sentences be by the regular appellate courts, suggest that statements be discretionary, but that they should normally be given in cases where sentences are modified by increase or reduction. Standard 3.1 (b), with commentary at 48.

[16] See the A. B. A. Standards cited at fn. 3, *supra*, with sources, and materials cited by Mr. Justice Marshall, concurring in *Dorszynski*

v. United States, 418 U. S. 424, 445, 457, fn. 22 (1974).  See also the
roundup in Kutak and Gottschalk, In Search of a Rational Sentence:
A Return to the Concept of Appellate Review, 53 Neb. L. Rev. 463,
488 et seq. (1974).  For unenthusiastic or negative views on rendering
statements, see Note, Appellate Review of Primary Sentencing
Decisions:  A Connecticut Case Study, 69 Yale L. J. 1453 (1960);
Halperin, Appellate Review of Sentence in Illinois — Reality or
Illusion?  55 Ill. Bar J. 300 (1966).