NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13294

CLIFFORD MARTIN  vs.  COMMONWEALTH.


Suffolk.      December 7, 2022. - May 22, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Wendlandt, &
Georges, JJ.


Practice, Criminal, Appellate Division, Sentence, Double
     jeopardy.  Constitutional Law, Sentence, Double jeopardy.


Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 10, 2021.

The case was heard by Kafker, J.


Ethan C. Stiles for the petitioner.
Julianne Campbell, Assistant District Attorney, for the
Commonwealth.


WENDLANDT, J.  "Equality consists in the same treatment of
similar persons."[1]  This case presents the question whether a
defendant who has been serving the incarcerated portion of an
illegal sentence imposed by the Appellate Division of the

---

[1] Aristotle, The Politics 286 (B. Jowett trans., Oxford
Univ. Press 1905) (Dover thrift ed. 2000).

Superior Court -- a panel comprising three Superior Court judges -- has the same double jeopardy protections under our common law as a defendant who has been serving the incarcerated portion of an illegal sentence imposed by a single Superior Court judge.

The defendant, Clifford Martin,[2] was resentenced by the Appellate Division to a term of from four to six years (resentence).  The resentence was illegal because the four-year term was less than the minimum term mandated by the Legislature for the offense of which the defendant was convicted.  See G. L. c. 265, § 13F.  Approximately six months after he was resentenced, a clerk of the Superior Court became aware of the error.  The defendant, who was serving his term pursuant to the resentence, was notified; and, following a hearing in the Appellate Division, the defendant's resentence was altered, this time to comply with the statutory mandate of a minimum term of five years (altered sentence).

The defendant petitioned a single justice of this court pursuant to G. L. c. 211, § 3, contending, inter alia, that the altered sentence violated our common-law principles of double jeopardy.  Reaching the merits of the petition, the single

---

[2] Although Clifford Martin commenced this action by filing a petition in the county court, for convenience, we refer to him as the defendant.

justice affirmed the Appellate Division's order imposing the altered sentence.

Concluding that the resentence was illegal but that the altered sentence violated our principles of double jeopardy as set forth in our jurisprudence, see Commonwealth v. Selavka, 469 Mass. 502, 513-514 (2014), we now reverse the decision of the single justice and direct that the Appellate Division's order issuing the altered sentence be vacated and the order issuing the resentence be reinstated.

1.  Background.  Following a jury trial, the defendant was convicted of three counts of indecent assault and battery on a person with an intellectual disability, pursuant to G. L. c. 265, § 13F (§ 13F counts), and one count of indecent assault and battery on a person 14 or older, pursuant to G. L. c. 265, § 13H (§ 13H count).  The trial judge sentenced the defendant to concurrent terms of from six to eight years in State prison on two of the § 13F counts, and to three years of probation to be served after his term of incarceration for the § 13H count and the remaining § 13F count.

The defendant timely appealed his sentence to the Appellate Division.  On November 17, 2020, following a hearing, the Appellate Division issued an order revising the defendant's sentence, reducing the period of incarceration of from six to eight years in prison on the two § 13F counts to from four to

six years in prison.  In February 2021, the defendant voluntarily withdrew his direct appeal from his conviction.

On May 5, 2021, a clerk of the Superior Court notified the defendant that the resentence was illegal and that another sentencing hearing would be held.  The defendant objected to any revision of the resentence on the ground that, given the passage of more than sixty days from the date the resentence was imposed, any alteration would violate principles of double jeopardy.[3]  On May 13, 2021, following a hearing, the Appellate Division revised the incarcerated portion of the defendant's sentence to concurrent terms of from five to six years.

On December 10, 2021, the defendant filed a petition pursuant to G. L. c. 211, § 3.  The single justice denied the petition on the merits, concluding that the resentence was illegal, that the correction of the resentence after almost six months did not violate double jeopardy principles, and that the sixty-day time limit provided by Mass. R. Crim. P. 29 (a) (1), as appearing in 474 Mass. 1503 (2016) (rule 29 [a]), did not

---

[3] The defendant relied on Mass. R. Crim. P. 29 (a) (1), as appearing in 474 Mass. 1503 (2016), which provided that "[t]he trial judge, upon the judge's own motion, or the written motion of the prosecutor, filed within sixty days of a sentence, may revise or revoke such sentence if the judge determines that any part of the disposition was illegal."  The rule was subsequently amended to replace the word "sentence" with "disposition." Mass. R. Crim. P. 29 (a) (1), as appearing in 489 Mass. 1503 (2022).

apply to proceedings in the Appellate Division.[4]  The defendant

timely appealed to the full court.

2.  Discussion.  a.  Standard of review.  This court

"review[s] a decision of a single justice pursuant to G. L.

c. 211, § 3, for clear error of law or abuse of discretion."

Nicholas-Taylor v. Commonwealth, 490 Mass. 552, 556 (2022).

"Because the defendant raises an issue of law, [this court]

review[s] the single justice's decision de novo." Garcia v.

Commonwealth, 487 Mass. 97, 101 (2021).

b.  Legality of the resentence.  We readily dispose of the

defendant's contention on appeal[5] that the resentence was not

---

[4] The defendant also filed, in the trial court, a motion for relief from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001) (rule 30 [a]), seeking relief from the altered sentence, and arguing that the Appellate Division violated double jeopardy principles when it revised his resentence six months after its imposition.  The trial judge denied the motion on the ground that he had been divested of jurisdiction when the defendant appealed to the Appellate Division.  The defendant then appealed from the denial of his rule 30 (a) motion to the Appeals Court.  Proceedings in the Appeals Court were stayed pending the resolution of the defendant's G. L. c. 211, § 3, petition.  After the single justice denied his petition, the defendant filed a motion to dismiss his appeal in the Appeals Court; it was dismissed with prejudice.

[5] Before the Appellate Division, the defendant acknowledged that "[t]he sentence of [from] four to six years was illegal" because "the statute under which [the defendant] was convicted requires a minimum of five years imprisonment."  He altered course in his memorandum of law in support of his rule 30 (a) motion.  See note 4, supra.  As did the single justice, we assume without deciding that the argument was not waived and proceed to address it on the merits.

illegal.[6]  Such an argument is untenable for the reasons this court recently explained in Commonwealth v. Rossetti, 489 Mass. 589 (2022).  In particular, the defendant was convicted of three counts of indecent assault and battery on a person with an intellectual disability, in violation of G. L. c. 265, § 13F, which provides, in relevant part:

> "Whoever commits an indecent assault and battery on a person with an intellectual disability knowing such person to have an intellectual disability shall for the first offense be punished by imprisonment in the [S]tate prison for not less than five years or not more than ten years . . . .  Except in the case of a conviction for the first offense for violation of this section, the imposition or execution of the sentence shall not be suspended, and no probation or parole shall be granted until the minimum imprisonment herein provided for the offense shall have been served."  (Emphasis added.)

Accordingly, the minimum term of a sentence of incarceration cannot be less than five years, and the single justice correctly determined that the resentence of from four to six years was illegal.  See Commonwealth v. Brown, 431 Mass. 772, 777 (2000) (addressing a similarly worded statute and concluding that

---

[6] A sentence is illegal if it:

"is in excess of the punishment prescribed by the relevant statutory provision or in some way contrary to the applicable statute[;] . . . is premised on a major misunderstanding by the sentencing judge as to the legal bounds of his authority[;] . . . [or it] contradicts the statutory provision in question, even where those contradictions favor the defendant" (quotations and citations omitted).

Commonwealth v. Walters, 479 Mass. 277, 280-281 (2018).

"[l]anguage such as this has always been interpreted in the same manner:  the 'not less than' phrase denotes a minimum sentence").  See also Rossetti, supra at 594 ("when the Legislature prescribes in an offense-specific statute that a defendant shall be incarcerated for 'not less than' a certain number of years, such language generally defines the 'minimum term' permitted under the statute, according to the plain meaning of such phrase. . . .  In other words, if a judge sentences a defendant to a term of incarceration, the judge has no discretion to sentence the defendant to less than the minimum term provided by the Legislature");[7] id. at 623 n.4 (Wendlandt, J., dissenting) ("where a statute sets forth both a minimum sentence and a maximum sentence and specifies that the minimum sentence is 'not less than' a specified number of years, the sentence cannot be for 'less than' that specified number of years").

c.  Finality in resentencing by the Appellate Division.  We turn to the novel question before us:  whether the Appellate Division's increase of a defendant's illegal resentence, six

_____

[7] Contrary to the defendant's contention, the discretion afforded in the statute to allow a judge alternatively to sentence a defendant to a term of probation does not allow the judge to reduce the minimum term where, as here, the judge imposed a sentence of incarceration.  See Rossetti, 489 Mass. at 596, 604.

months after it imposed the resentence, violates the principles of double jeopardy.

Relevant to the present appeal, double jeopardy principles prohibit the State from increasing a defendant's sentence once the defendant's reasonable expectation of finality in the imposed sentence has "crystallized." Selavka, 469 Mass. at 513. In Selavka, we concluded that, after sixty days, double jeopardy principles preclude the Commonwealth from altering a defendant's sentence so as to make it more punitive. Id. at 513-514. This protection from governmental overreach, we held, was required by principles of double jeopardy even where the defendant's sentence was "illegal" insofar as the imposed sentence did not comply with the minimum sentence prescribed by the relevant statute for the offense of which the defendant was convicted. Id., quoting Dunbrack v. Commonwealth, 398 Mass. 502, 506 (1986) (correction of illegal sentence permissible only when error "is discovered in a timely manner" [emphasis added]). Sixty days was a reasonable period, we determined, because rule 29 (a), as appearing in 378 Mass. 899 (1979), set forth a period of sixty days to revise and revoke a sentence to correct any errors. See Selavka, supra.[8] Even though rule 29 (a) did not provide a

---

[8] Limiting the period for detecting sentencing errors to sixty days creates "an effective institutional incentive for the State to ascertain the correctness of sentencing orders at or near the time of punishment, thereby preventing the harm and

mechanism for the Commonwealth to appeal an illegal sentence, we nonetheless construed rule 29 (a) to permit the Commonwealth to do so, id. at 508;[9] but, we explained, once that sixty-day period had lapsed, the Commonwealth was no longer free to "shatter" the defendant's legitimate interest in repose, id. at 513, quoting Double Jeopardy, 91 Harv. L. Rev. 101, 102 (1977).  Absent some action during this window, the time for the appellate process has come to an end, and the defendant has a reasonable expectation of finality in the sentence, even an illegal one. Cf. Commonwealth v. Sanchez, 485 Mass. 491, 507 (2020) ("the

---

injustice that occur when the defendant's reasonable expectation of finality has been frustrated for the legitimate but not indomitable sake of accuracy."  Weisbord & Thomas, Judicial Sentencing Error and the Constitution, 96 B.U. L. Rev. 1617, 1617-1618 (2016).

We have determined that a sentence may even become final before sixty days if the defendant has completed her sentence. Commonwealth v. Ellsworth, 485 Mass. 29, 30-31, 34-35 (2020).

[9] Until it was amended in 2016 to comply with our decision in Selavka, rule 29 (a) provided:

> "The trial judge upon his own motion or the written motion of a defendant filed within sixty days after the imposition of a sentence, . . . may, upon such terms and conditions as he shall order, revise or revoke such sentence if it appears that justice may not have been done."

Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979).  Pursuant to the 2016 and 2022 amendments, the trial judge now may also do so "upon . . . the written motion of the prosecutor" (emphasis added).  Mass. R. Crim. P. 29 (a) (1), as appearing in 489 Mass. 1503 (2022); Mass. R. Crim. P. 29 (a) (1), as appearing in 474 Mass. 1503 (2016).

defendant is understood to remain in continuing jeopardy from the first prosecution throughout the appellate process").  This protection, we said, was required by our common law of double jeopardy principles to secure a defendant's finality interest. Selavka, supra at 513.

The Commonwealth maintains that the defendant's finality interest in this case is different from the interest of the defendant in Selavka; it contends that because the defendant here appealed his sentence to the Appellate Division, he has no finality interest in an illegal sentence imposed by that body even though 177 days had lapsed -- a period of time almost three times as long as the sixty-day period set forth in Selavka.[10]

---

[10] In Selavka, 469 Mass. at 514, the defendant had served seven months of the incarcerated portion of his illegal sentence and had been released on parole when the Commonwealth sought to correct it; here, the defendant already had served over one and one-half years before the Appellate Division acted on his timely motion and, more significantly, had served another six months after the Appellate Division issued its illegal resentence before the defendant was notified that the Appellate Division would change it.  At this point, the defendant has served approximately four years of the incarcerated portion of his sentence -- the minimum term imposed (albeit illegally) by the Appellate Division.

We explained in Selavka that the delayed resentencing was particularly unfair where "the defendant was given no opportunity to withdraw his guilty plea" when he was resentenced with an additional probationary term, id., because the revision did not "conform to [his] legitimate sentence expectation," id., quoting Commonwealth v. Goodwin, 458 Mass. 11, 21 (2010). Similarly, here, the defendant argues that he withdrew his direct appeal in February 2021 because of his expectation that his November 2020 resentence was final.

The finality interest protected by our double jeopardy principles, the Commonwealth argues, does not prohibit the Commonwealth from altering the defendant's sentence despite this lengthy delay because the Appellate Division has no comparable rule 29 (a).[11]  Instead, because the Appellate Division's decisions are not subject to appeal under rule 29 (a) -- because they are "final," G. L. c. 278, § 28B -- the defendant's interest in repose, the Commonwealth urges, is not protected despite the substantial time that lapsed between the imposition of the resentence and the Appellate Division's corrective action.  See Commonwealth v. Callahan, 419 Mass. 306, 308-309 (1995) ("order of the Appellate Division is final").  In other words, the Commonwealth contends that, because the decision of the Appellate Division is, by statute, final, the defendant has no legitimate finality interest in its determination.

---

[11] The Commonwealth attempts to distinguish the defendant's altered sentence from the resentencing in Selavka on the basis that rule 29 (a) does not apply to the Appellate Division. However, as set forth supra, prior to its amendment in 2016, rule 29 (a) did not permit the Commonwealth to appeal an illegal sentence, regardless of how many days had passed since the imposition of the sentence.  Nevertheless, in Selavka, 469 Mass. at 513-514, we adopted a sixty-day period for resentencing, even though rule 29 (a) did not technically permit the appeal brought by the Commonwealth in that case.  In other words, we applied the sixty-day period from rule 29 (a) even though, at the time, rule 29 (a) did not govern the appeal.  There is no basis to proceed differently in this case.

The Commonwealth's argument cannot be squared with our fundamental commitment to justice as embodied in our common-law double jeopardy jurisprudence. See Selavka, 469 Mass. at 513. Indeed, in view of the statutory mandate that the Appellate Division's sentences are "final," G. L. c. 278, § 28B, and not appealable, our reasoning in Selavka applies with even greater force to protect the defendant in this case from this "grievous harm" to his finality interest, Selavka, supra (citation omitted). There is no basis to treat the defendant here, who availed himself of the Appellate Division, worse than a defendant who did not do so.[12]

Mistakes happen; and when timely brought to the Appellate Division's attention, they should be correctable.[13] However, as we explained in Selavka, 469 Mass. at 509, "even an illegal

_____

[12] The defendant had the right to appeal his sentence. See G. L. c. 278, § 28B ("A person aggrieved by a sentence which may be reviewed may appeal to the appellate division for a review of such sentence"). See also Commonwealth v. Knight, 392 Mass. 192, 196 n.3 (1984), quoting Commonwealth v. Whitehead, 379 Mass. 640, 644 (1980) ("For any relief from the alleged severity of the sentences[,] recourse . . . is to the Appellate Division of the Superior Court under G. L. c. 278, §§ 28A-28D").

[13] In fact, the Superior Court is authorized to amend Rule 64 of the Rules of the Superior Court (2022) to provide a short period of time to permit the Appellate Division to correct errors such as the one made by the Appellate Division here. See G. L. c. 278, § 28B ("The [S]uperior [C]ourt . . . may by rule make . . . regulations of procedures relative thereto, consistent with law, as justice may require"). See also Gavin v. Commonwealth, 367 Mass. 331, 333 & n.5 (1975).

sentence will, with the passage of time, acquire a finality that bars further punitive changes detrimental to the defendant." The guarantee against double jeopardy is "not simply res judicata dressed in prison grey"; "[i]t was called forth more by oppression than by crowded calendars." Twice in Jeopardy, 75 Yale L.J. 262, 277 (1965). The overriding concern underlying the prohibition against double jeopardy has been "with 'oppressive' tendencies in even well-motivated prosecutions, arising from the inherent powers, prerogatives, and resources of the sovereign in criminal cases and the devastating and one-sided nature of the jeopardy to which the individuals confronted by these powers are subjected." Rosenthal, Prosecutor Misconduct, Convictions, and Double Jeopardy: Case Studies in an Emerging Jurisprudence, 71 Temp. L. Rev. 887, 942 (1998).

Accordingly, when sufficient time has lapsed, even an illegal sentence becomes final, and double jeopardy principles preclude upward adjustments thereto by the State. We concluded in Selavka, 469 Mass. at 513-514, that the requisite time period was sixty days. Our common law of double jeopardy affords the defendant in this case no less protection.

3. Conclusion. We reverse the decision of the single justice and remand the case to the county court for entry of a judgment, pursuant to G. L. c. 211, § 3, vacating the Appellate

Division's May 13, 2021 sentencing order and reinstating the Appellate Division's November 17, 2020 sentencing order.

So ordered.

CYPHER, J. (dissenting).  The defendant was not punished twice for the same offense.[1]

The guarantee against double jeopardy "protects against multiple punishments for the same offense."  Commonwealth v. Selavka, 469 Mass. 502, 509 (2014), quoting Aldoupolis v. Commonwealth, 386 Mass. 260, 271-272, cert. denied, 459 U.S. 864 (1982), S.C., 390 Mass. 438 (1983).  The defendant's sentence was merely corrected to comply with the minimum sentence required by law.  After availing himself of the right to appeal his sentence to the Appellate Division of the Superior Court, he received, even after the revised May 2021 sentence of from five to six years in State prison (May sentence), a sentence significantly more favorable than his initial sentence of from six to eight years in State prison.  Although I agree with the court that the November 2020 sentence of from four to six years (November sentence) was illegal, I would conclude that in the circumstances here, the Appellate Division's delay in correcting the sentence did not implicate principles of double jeopardy.  I would also conclude that the holding of Selavka does not apply to this case.

---

[1] Although Clifford Martin commenced this action by filing a petition in the county court, for convenience, I refer to him as the defendant.

To understand why Selavka does not apply, one must begin by looking at the history and procedure of the Appellate Division. The Appellate Division is a creature of statute. I.R. Macey, Handbook of Practice and Procedure for the Appellate Division of the Superior Court of Massachusetts 2 (1981) (Macey). In 1942, the Judicial Council of Massachusetts proposed that there "be provision by which the Superior Court itself in an appellate session should be able to review a sentence in a summary proceeding." Eighteenth Report of the Judicial Council, Pub. Doc. No. 144, at 28 (1942). The Judicial Council recommended that the Appellate Division be created to correct mistakes and disparities in sentencing without subjecting a defendant to a lengthy and costly appellate process. Id. at 29. See Macey, supra at 2, 38 (Appellate Division's "purpose is not to seal an appellant's judgment by simple agreement with the sentencing judge, but, rather, to closely scrutinize the action of another justice and, from a variety of factors before it, arrive at a just determination of whether such action was appropriate or was inappropriate or arbitrary"). Enacted in 1943, G. L. c. 278, §§ 28A-28C, were intended to permit review of whether a sentence imposed by a trial judge was appropriate at the time it was

imposed.[2]  Macey, supra.  The Appellate Division is the only authority permitted to review a lawful sentence.  Commonwealth v. D'Amour, 428 Mass. 725, 746 (1999).

"[T]he only question . . . open before the Appellate Division [is] the appropriateness of the sentence imposed by the trial [or sentencing] judge."  Hicks v. Commonwealth, 345 Mass. 89, 92 (1962), cert. denied, 374 U.S. 839 (1963).  The Appellate Division is "a vehicle whereby extreme harshness or leniency by judges in sentencing could be corrected" (citation omitted).  Lena v. Commonwealth, 369 Mass. 571, 574 n.2 (1976).  "It has no authority over the judgment of conviction."  Commonwealth v. Callahan, 419 Mass. 306, 308 (1995) (Appellate Division not appellate court within meaning of Mass. R. Crim. P. 29 [a], 378 Mass. 899 [1979]).  The Appellate Division is limited in the types of sentences that it may review:  sentences to State prison except in any case where a different sentence could not have been imposed, and sentences "to the reformatory" for women for terms of more than five years.  G. L. c. 278, § 28A.  It also may review any other sentence which was imposed when the sentence appealed from was imposed.  G. L. c. 278, § 28B.

---

[2] General Laws c. 278, § 28D, which since has been repealed, discussed the salaries of various Appellate Division employees. See St. 2007, c. 61, § 31, effective July 1, 2007.

The Appellate Division is comprised of three judges of the Superior Court who are designated from time to time by the chief justice of the Superior Court, with two judges constituting a quorum.[3]  G. L. c. 278, § 28A.  Gavin v. Commonwealth, 367 Mass. 331, 332 (1975).  The clerk of the Superior Court for criminal business in Suffolk County is designated as the clerk of the Appellate Division, and the clerk or an assistant clerk shall attend all sittings, retain all records, and record the proceedings.  G. L. c. 278, § 28A.

When a sentence is imposed which may be subject to review by the Appellate Division, the clerk shall notify a defendant of the right of appeal.  G. L. c. 278, § 28B.  A defendant has ten days after the imposition of his or her sentence to file an appeal to the Appellate Division; this does not stay the execution of the sentence.  Id.  The judge who imposed the sentence on review may submit a statement of his or her reasons underlying the sentence to the Appellate Division and must do so within seven days, if requested by the Appellate Division.  Id.  "An appeal from a sentence is analogous to an appeal from any judgment or order in that, once a party enters an appeal, the judge issuing the order from which an appeal is taken is

---

[3] No judge may sit on an appeal of a sentence that he or she imposed.  G. L. c. 278, § 28A.

divested of jurisdiction to act on motions to rehear or to vacate."  Callahan, 419 Mass. at 309.

The Appellate Division may amend a judgment by ordering a different appropriate sentence or disposition that could have been made at the time of the imposition of the initial sentence, but it may not increase a sentence without giving a defendant an opportunity to be heard.[4]  G. L. c. 278, § 28B.  The Appellate Division has the power to "reduce, increase, or affirm" the sentence initially imposed.  Croteau, petitioner, 353 Mass. 736, 738 (1968).  Where it decides that the initial sentence should stand, the Appellate Division may dismiss the appeal.  G. L. c. 278, § 28B.

Any time served on a sentence which was appealed shall be applied to a substituted sentence.  G. L. c. 278, § 28C.  The Appellate Division's "decision shall be final."  G. L. c. 278, § 28B.  Commonwealth v. Barros, 460 Mass. 1015, 1015 (2011).  The statute gives the Superior Court the power to establish rules surrounding such appeals, "as justice may require."  G. L. c. 278, § 28B.  See Rule 64 of the Rules of the Superior Court (2020).  The Superior Court has left this power "largely unexercised."  Gavin, 367 Mass. at 333.

---

[4] The Appellate Division is not otherwise required to hold a hearing.  G. L. c. 278, § 28B.  Here, in both November 2020 and May 2021, the defendant was given an opportunity to be heard.

The constitutional right to counsel applies to proceedings in the Appellate Division.[5]  Croteau, petitioner, 353 Mass. at 738.  This court has held that an increase in sentence by the Appellate Division does not constitute double jeopardy, and the Appellate Division need not state its reasons for increasing a sentence.  Walsh v. Commonwealth, 358 Mass. 193, 197, 201 (1970) ("when a convicted defendant resorts to the statutory procedure [of an appeal to the Appellate Division] for review of a sentence he assumes the same risks inherent in an appeal from a conviction" [citation omitted]).[6]

To better place the double jeopardy analysis in context, I discuss Federal jurisprudence on the double jeopardy clause of the United States Constitution before focusing on State-specific protections against double jeopardy.  The double jeopardy clause in the Fifth Amendment to the United States Constitution provides, "nor shall any person be subject for the same offence

---

[5] Rule 64 of the Rules of the Superior Court specifies that counsel representing a defendant at sentencing shall continue to do so at the Appellate Division "unless (a) specifically excused by the court, or (b) successor counsel enters an appearance with the Appellate Division."

[6] In Gavin, 367 Mass. at 343-344, the court posed the question whether a rule regarding the provision of a statement of reasons for increasing a sentence should be promulgated in the "interests of the 'proper administration of criminal justice,'" but indicated that, if change is to be made, the Superior Court should be the body to effect such change (citation omitted).

to be twice put in jeopardy of life or limb."  The prohibition against double jeopardy consists of three separate protections: "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  <u>Selavka</u>, 469 Mass. at 509, quoting <u>Aldoupolis</u>, 386 Mass. at 271-272.  "[T]he primary purpose of the [d]ouble [j]eopardy [c]lause was to protect the integrity of a final judgment."  <u>United States</u> v. <u>Scott</u>, 437 U.S. 82, 92 (1978), citing <u>Crist</u> v. <u>Bretz</u>, 437 U.S. 28, 33 (1978).  "[T]here can be no doubt that the protection against double jeopardy possesses a long history."  Rudstein, A Brief History of the Fifth Amendment Guarantee Against Double Jeopardy, 14 Wm. & Mary Bill Rts. J. 193, 197 (2005).[7]  The

---

[7] "Ancient Jewish law contains several references to principles encompassed by double jeopardy law."  Rudstein, <u>supra</u> at 197.  Both early Greek and Roman law contained some form of protection against double jeopardy.  <u>Id.</u> at 198, citing <u>Bartkus</u> v. <u>Illinois</u>, 359 U.S. 121, 151-152 (1959) (Black, J., dissenting).  Demosthenes, the Greek orator and pleader in law courts, stated in 355 B.C. that "the laws forbid the same man to be tried twice on the same issue, be it a civil action, a scrutiny, a contested claim, or anything else of the sort." Rudstein, <u>supra</u>, quoting Demosthenes, Against Leptines, Olynthiacs, Philippics, Minor Public Speeches, Speech Against Leptines, XX § 147, at 589 (J.H. Vince trans., Harvard Univ. Press 1998) (1930).  "The Roman law contained the maxim nemo debet bis puniri pro uno delicto, that is '[n]o one ought to be punished twice for the same offense'" (footnote omitted). Rudstein, <u>supra</u> at 200, quoting Black's Law Dictionary 1736 (8th ed. 2004).  Canon law also contained protections against being put in jeopardy twice for the same offense.  Rudstein, <u>supra</u>.

protection against multiple punishments for the same offense emerges from the understanding that "judges should not impose multiple punishment for a single legislatively defined offense." Twice in Jeopardy, 75 Yale L. J. 262, 267 (1965). See Jones v. Thomas, 491 U.S. 376, 381 (1989), quoting United States v. Halper, 490 U.S. 435, 450 (1989) ("in the multiple punishments context, that interest [which the double jeopardy clause seeks to protect] is 'limited to ensuring that the total punishment did not exceed that authorized by the legislature'"); Albernaz v. United States, 450 U.S. 333, 344 (1981) ("the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed").

Unlike the United States Constitution, the Massachusetts Declaration of Rights does not contain a double jeopardy clause; nonetheless, "we consider our common law to embrace the same principles and protections." Selavka, 469 Mass. at 509 n.8.[8]  In

---

"[T]he guarantee against double jeopardy became firmly entrenched in the common law in the form of the pleas of autrefoits acquit (a former acquittal), autrefoits convict (a former conviction), and pardon." Id. at 204.

[8] "The first colonial enactment containing an express guarantee against double jeopardy appeared in 1641 when the General Court of the Massachusetts Bay Colony enacted the Body of Liberties," which served as a model and was "the most important . . . forerunner of the federal Bill of Rights." Rudstein, supra at 221-222, quoting 1 B. Schwartz, The Bill of Rights:  A Documentary History 69 (1971).  This guarantee

a sentencing context, "[i]ssues of double jeopardy . . . turn on the question of the defendant's legitimate expectation of finality." Commonwealth v. Ellsworth, 485 Mass. 29, 34 (2020). See Commonwealth v. Woodward, 427 Mass. 659, 687 (1998), quoting Jones, 491 U.S. at 394 (Scalia, J., dissenting) ("[W]hen a sentence is increased in a second proceeding 'the application of the double jeopardy clause . . . turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited'"); United States v. Fogel, 829 F.2d 77, 87 (D.C. Cir. 1987) (same). "The ban on increased punishment may be overcome . . . in certain limited situations in which society's interest in the administration of justice outweighs the defendant's interest in finality," including where the defendant's "initial sentence is invalid." A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple-Punishment Prohibition, 90 Yale L.J. 632, 638 (1981).

The United States Supreme Court has discussed double jeopardy in relation to an increase in a sentence for which service has begun. In Ex parte Lange, 85 U.S. 163, 164 (1873),

_____

provided that "[n]o man shall be twise sentenced by Civill Justice for one and the same Crime, offence, or Trespasse." Hessick & Hessick, Double Jeopardy as a Limit on Punishment, 97 Cornell L. Rev. 45, 51 (2011), quoting Rudstein, supra at 222.

the defendant was sentenced to serve a year in prison <u>in addition to</u> the payment of a $200 fine, despite the fact that the statute only allowed punishment by imprisonment for not more than one year <u>or</u> the payment of a fine. After the defendant paid the fine, and served five days in prison, the trial court vacated that judgment entirely and sentenced him to one year of imprisonment. <u>Id</u>. at 175. This violated the constitutional protection from being put in jeopardy twice. "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." <u>Id</u>. at 168. In this situation, the defendant was "put to actual punishment twice for the same thing." <u>Id</u>. at 175. When the defendant "had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." <u>Id</u>. at 176. In <u>United States</u> v. <u>Benz</u>, 282 U.S. 304, 307 (1931), interpreting <u>Lange</u>, the Court stated in dicta that the distinction "that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, . . . [is based] upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense."

Nonetheless, in <u>Bozza</u> v. <u>United States</u>, 330 U.S. 160, 166 (1947), the Court indicated that it had "rejected the 'doctrine

that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.'" Id., quoting In re Bonner, 151 U.S. 242, 260 (1894).  There, the sentencing judge inadvertently omitted mandatory fines and penalties, which he then imposed five hours after the sentence was announced.  Bozza, supra at 165.  In affirming the sentence, the Court indicated:

> "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. . . .  In this case the court 'only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the conviction of the offender.'  [Bonner, supra].  It did not twice put petitioner in jeopardy for the same offense.  The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense" (footnote omitted).

Id. at 166-167.  In a footnote, the Court explained the difference between Bozza and Lange; in Lange, the defendant already had completed a "lawful" punishment when he was resentenced, contrary to the petitioner in Bozza, who was prescribed an illegal sentence which was not yet fully served.  Id. at 167 n.2.

The opinion in United States v. DiFrancesco, 449 U.S. 117 (1980), clarified Lange and Benz and discussed the Court's double jeopardy precedent in detail.  See United States v. Henry, 680 F.2d 403, 410 (5th Cir. 1982) (mentioning

DiFrancesco's discussion of purpose and history of double jeopardy clause).  Generally,

> "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . .  The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

DiFrancesco, supra at 127-128, quoting Green v. United States, 355 U.S. 184, 187-188 (1957).  Primary purposes of the clause include preserving finality of judgments and the prohibition of successive prosecutions on the same offense.  DiFrancesco, supra at 128.  Where absolute finality is afforded to an acquittal, "[t]he result is definitely otherwise in cases where the trial has not ended in an acquittal," including situations such as a mistrial occasioned by either manifest necessity or a defendant's motion, termination of a trial at a defendant's request prior to a jury verdict, or retrial after a defendant's convictions are set aside for reasons other than insufficiency of the evidence.  Id. at 130-131.

"Historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal." DiFrancesco, 449 U.S. at 133.  At common law, an increase of a

sentence by the trial court was permissible during the same term of court. Id. at 133-134. Where the defendant in DiFrancesco was "charged with knowledge of the statute" allowing the government to appeal his sentence with respect to an increase after a dangerous special offender hearing, he "ha[d] no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." Id. at 125, 136. The defendant is no longer subject to the "risk of being harassed and then convicted, although innocent." Id. at 136. "The [d]ouble [j]eopardy [c]lause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137.

The Court distinguished Lange, and the "dictum in Benz," as confined "to Lange's specific context." Id. at 139. Henry, 680 F.2d at 410-411 (court in DiFrancesco indicated Lange "should not be read as standing for the proposition that the trial court may not increase a defendant's sentence if he has begun to serve it"). DiFrancesco "stands for the proposition that the double jeopardy clause does not provide an absolute bar to increasing a defendant's sentence." Henry, 680 F.2d at 411. See Fogel, 829 F.2d at 87 ("the Court in DiFrancesco left undisturbed the principle announced in Bozza that a court may permissibly increase a sentence if necessary to comply with a statute").

In Massachusetts, when determining whether a defendant has a legitimate expectation of finality in his or her sentence based on double jeopardy principles, we consider several different factors, including the legality of the original sentence, the timeliness of any motion to revise or revoke, whether a motion to stay the execution of the sentence was filed, and whether the sentence already has been fully served. Ellsworth, 485 Mass. at 34.  See Commonwealth v. Grundman, 479 Mass. 204, 207-208 (2018); Commonwealth v. Scott, 86 Mass. App. Ct. 812, 815 (2015).  In the context of revisions made by a sentencing judge, we have said that "[a] sentence is considered final once the sixty-day window within which to file a motion to revise or revoke has expired," as set out in Mass. R. Crim. P. 29, 489 Mass. 1503 (2022) (rule 29).  Ellsworth, supra.  See Aldoupolis, 386 Mass. at 274 (sentence is final subject to judge's limited power to revise and revoke within sixty days after imposition).[9]

---

[9] This sixty-day period set out in rule 29 (a) "substitutes a fixed time period . . . for the exercise of a judge's power in lieu of the traditional -- and more uncertain -- common law period of 'term of court.'"  Aldoupolis, 386 Mass. at 271.  See District Attorney for the N. Dist. v. Superior Court, 342 Mass. 119, 122 (1961) ("At common law the sentences could not have been revised . . . after the end of the term or sitting"); Commonwealth v. Weymouth, 2 Allen 144, 145 (1861) ("It seems to have been recognized as one of the earliest doctrines of the common law, that the record of a court may be changed or amended at any time during the same term of the court in which a judgment is rendered").  Therefore, I would reject the

Because an illegal sentence "contravenes the intention of the Legislature . . . the modification of an illegal sentence, in itself, has not been seen as subjecting a defendant to multiple punishments." Selavka, 469 Mass. at 510. The corrected sentence simply "imposes a valid punishment for an offense instead of an invalid punishment for that offense," even where the corrected sentence is harsher. Id., quoting Bozza, 330 U.S. at 167. A sentencing judge has the flexibility to respond if an error in the sentence "is discovered in a timely manner." Dunbrack v. Commonwealth, 398 Mass. 502, 506 (1986). See Bozza, 330 U.S. at 166-167; State v. Schubert, 212 N.J. 295, 309 (2012), quoting State v. Austin, 335 N.J. Super. 486, 494 (App. Div. 2000) ("An illegal sentence that has not been completely served may be corrected at any time without impinging upon double-jeopardy principles"); People v. Williams, 14 N.Y.3d 198, 212, cert. denied, 562 U.S 947 (2010) ("Our precedent has long recognized that courts have the inherent authority to correct illegal sentences").

---

defendant's suggestion to limit the time period for a judge to correct an illegal sentence to the same "term of court" in which a defendant has been sentenced. The Appellate Division was not created by statute until 1943. Macey, supra at 2. The common-law rule that sentences were not to be revised after the end of the term or sitting was not established with such a judicial body in mind.

A defendant's expectation of finality is diminished when his or her sentence is illegal.  Selavka, 469 Mass. at 513. Nonetheless, where a defendant's expectation of finality in his or her initial sentence has "'crystallized' after enough time," even an illegal sentence may become final for purposes of double jeopardy.  Id., quoting United States v. Lundien, 769 F.2d 981, 987 (4th Cir. 1985), cert. denied, 474 U.S. 1064 (1986).

Generally, other jurisdictions have held that an illegal sentence can be corrected while a defendant still is serving his or her sentence but have rejected such an upward modification where a defendant has completed the original sentence.  See Williams, 14 N.Y.3d at 215-216 & n.2 (discussing Federal circuit and State cases).  See, e.g., United States v. Silvers, 90 F.3d 95, 101 (4th Cir. 1996) ("Although an expectation of finality does not legitimately accrue by the mere commencement of the sentence, once a defendant fully serves a sentence for a particular crime, the [d]ouble [j]eopardy [c]lause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime"); United States v. Daddino, 5 F.3d 262, 265 (7th Cir. 1993) (where time for appeal passed and defendant completed incarcerated portion of sentence and paid all fines and restitution, those portions of sentence could not be amended without violating legitimate expectation of finality); United States v. Rourke, 984 F.2d 1063, 1066 (10th

Cir. 1992) ("defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification"); United States v. Arrellano-Rios, 799 F.2d 520, 524-525 (9th Cir. 1986) (jeopardy attaches on completion of sentence and it may not be increased after that point); United States v. Warner, 690 F.2d 545, 555 (6th Cir. 1982) (double jeopardy clause does not prohibit amending sentence to add mandatory special parole term); Oksanen v. United States, 362 F.2d 74, 80 (8th Cir. 1966) (sentencing defendant to three years' probation beyond original probationary sentence after completion of original probationary term violated double jeopardy clause); Smith v. State, 334 So.3d 377, 379 (Fla. Dist. Ct. App. 2022) ("when a defendant serves the entirety of his or her sentence, it violates the prohibition against double jeopardy to resentence the defendant"); Allen v. State, 853 So.2d 533, 536 (Fla. Dist. Ct. App. 2003) ("It does not offend double jeopardy principles to resentence a defendant to harsher terms when the original sentence was invalid, particularly when, as in the instant case, it is the defendant who brings his sentence into question"). Contrast Breest v. Helgemoe, 579 F.2d 95, 99-101 (1st Cir. 1978) (court had duty to correct statutorily invalid sentence even after petitioner began service and did not violate double jeopardy principles in doing so, though time for court to correct invalid sentence is subject

to some temporal limit to prevent violation of due process); Grant v. State, 379 P.3d 993, 994 (Alaska Ct. App. 2016) (illegally lenient sentence not "meaningfully imposed," thus, upward modification to extent necessary to cure illegality not violative of double jeopardy); Waddell v. People, 2020 CO 39, ¶ 14 ("Double [j]eopardy [c]lauses may function as a shield against multiple punishments, [but] they may never be used as a sword to enforce an illegal sentence"); People v. District Court, 673 P.2d 991, 997 (Colo. 1983) (en banc) ("Granting defendants a right to benefit from illegal sentences serves no sound public policy"); State v. Fry, 61 Haw. 226, 228-230 (1979) (court had duty to correct illegal sentence and impose original prison term even after seven-year delay and after defendant was released from prison because "[w]here the original punishment was invalid, as here, a correction which produces a valid sentence does not place the defendant in double jeopardy even if that correction increases his punishment"); State v. Calmes, 632 N.W.2d 641, 649 (Minn. 2001) (correction of illegal sentence did not violate double jeopardy because it did "not impose multiple punishments, but simply the single punishment that was mandatory at the time of sentencing"); State v. Yazzie, 2009 UT 14, ¶ 17, quoting State v. Babbel, 813 P.2d 86, 88 (Utah 1991) ("district

court can correct the [illegal] sentence at any time, which includes before, after, 'and even if there is no appeal'").[10]

In Massachusetts, the court in Selavka set out a sixty-day time period, as specified in rule 29 (a), for the Commonwealth to seek to correct sentencing errors under the rule. Selavka, 469 Mass. at 513-514. "Even an illegal sentence will become final for the purposes of double jeopardy after the expiration of that time period, and no longer will be subject to revision or revocation within the terms of rule 29 (a)." Id. at 514. Until Selavka, it was unclear whether the Commonwealth could file a motion pursuant to rule 29 (a). This sixty-day time

---

[10] Other courts have concluded that resentencing a defendant who already has been released from confinement is unconstitutional. See DeWitt v. Ventetoulo, 6 F.3d 32, 35-36 (1st Cir. 1993), cert. denied, 511 U.S. 1032 (1994) (considering multiyear period between suspension and reimposition of sentence, reasonableness of defendant's reliance, his release from prison and formation of new roots, tardiness of State in failing to correct error, and existence of alternative parole revocation remedy, "very rare exception to the general rule that courts can, after sentence, revise sentences upward to correct errors"); Lundien, 769 F.2d at 986-987 (due process may be denied when sentence enhanced after defendant has served so much of sentence that expectations as to finality have crystallized); Jordan v. United States, 235 A.3d 808, 816 n.10, 818 (D.C. 2020) (later upward revision to defendant's sentence may constitute substantive due process violation; but declining to take concurrence's approach that double jeopardy clause, as opposed to due process protections, imposes limits on court's ability to correct illegal sentence, as court "has never found a violation of double jeopardy where a court corrects a sentence that, when imposed, was outside its statutory authority"); Williams, 14 N.Y.3d at 217 (after release from prison and once time to appeal has expired, legitimate expectation of finality arises and double jeopardy prevents upward modification to sentence).

period, coupled with a finding that either "any part of the disposition was illegal," rule 29 (a) (1), or "that justice may not have been done," rule 29 (a) (2), "reasonably balances the defendant's interest in finality against society's interest in law enforcement." Aldoupolis, 386 Mass. at 275.

Despite his concession in his memorandum in support of his G. L. c. 211, § 3, petition that rule 29 (a) does not apply to the Appellate Division, the defendant now argues that rule 29 (a) should apply to sentences imposed by the Appellate Division.[11] Today, the court endorses this view. I agree with the single justice that rule 29 (a) does not apply to the Appellate Division; therefore, the sixty-day rule discussed in Selavka is not conclusive on the double jeopardy issue. See, e.g., Mass. R. Crim. P. 29 (a) (referencing "trial judge").

In Callahan, 419 Mass. at 308, the court discussed the Appellate Division in relation to rule 29 (a). There, the defendant argued that he filed his motion to revise his sentence within the sixty-day time period set out in rule 29 (a) because, although it was not filed within sixty days of the imposition of

---

[11] The defendant points to Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court (No. 1), 484 Mass. 431, 450, S.C., 484 Mass. 1029 (2020), to support his argument that this court has acknowledged the limitations of the judicial branch as a whole to revise and revoke sentences after sixty days. That case does not help the defendant's position. There, the court stated that a sentencing judge may review a sentence imposed within the limits of rule 29 (a). Id. at 450-451.

his initial sentence, he filed it within sixty days of the Appellate Division increasing his sentence. Id. This court rejected that argument "because the Appellate Division is not an appellate court within the meaning of rule 29 (a)," as it does not have authority to review a judgment beyond the sentence imposed. Id. See Commonwealth v. Malick, 86 Mass. App. Ct. 174, 185 (2014) (appeal to Appellate Division "functions as an exclusive and final challenge to a sentence," and its affirmance of sentence "precluded any separate relief by motions to revise or revoke under" rule 29).

As previously noted, the Appellate Division was created in response to a suggestion from the Judicial Council of Massachusetts to allow for "the Superior Court itself" in an appellate session to review a sentence. Eighteenth Report of the Judicial Council, Pub. Doc. No. 144, at 28 (1942). Its purpose is to correct "extreme harshness or leniency by judges in sentencing" (citation omitted). Lena, 369 Mass. at 574 n.2. Review in the Appellate Division "has to some extent the character of an extension . . . of the trial judge's effort to attain a just sentence." Gavin, 367 Mass. at 342. "[I]t can be doubted that such distinctions as can be pointed to between the functions of the trial judge and the Appellate Division are such as to make a constitutional difference" in analyzing a sentence imposed by the Appellate Division. Id.

Despite the similarity between the Appellate Division and a sentencing judge in the focus for both entities to ensure a just sentence, the purpose of the Appellate Division is distinct from that of an ordinary trial court judge imposing an initial sentence in that its focus is limited to reviewing the sentence to correct "extreme" deviations. Lena, 369 Mass. at 574 n.2. See Gavin, 367 Mass. at 341 (statement of reasons may be written more easily by Appellate Division revising sentence than by trial judge imposing original sentence, because "the former would be a more focused analysis looking to correction of possible misjudgment embodied in the sentence reviewed rather than to the formation of an original judgment"). See also Callahan, 419 Mass. at 308 (Appellate Division has no authority over judgment of conviction). The Appellate Division is the only judicial body permitted to review a lawful sentence, D'Amour, 428 Mass. at 746, and it has the power to reduce, increase, or affirm the sentence imposed by the sentencing judge, Croteau, petitioner, 353 Mass. at 738. Additionally, although a defendant has a right to appeal his or her sentence where it qualifies for review, G. L. c. 278, §§ 28A, 28B, the defendant makes the choice whether to open his or her sentence to revision by the Appellate Division, affecting his or her legitimate expectation of finality. See Commonwealth v. Tinsley, 487 Mass. 380, 391-392 (2021); Walsh, 358 Mass. at 197

(when defendant appeals sentence to Appellate Division "he assumes the same risks inherent in an appeal from a conviction").

It is apparent then, in my view, that the nature of sentences altered by the Appellate Division markedly is different from those imposed by a trial judge or a plea judge. In accordance with the statutorily granted permission to promulgate rules and regulations for proceedings in the Appellate Division, the Superior Court created Rule 64 of the Rules of the Superior Court specifically to address the procedure in the Appellate Division. This rule makes no mention of the sixty-day period to move for revision or revocation of a sentence issued by the Appellate Division.[12] For all of these reasons, I do not think that rule 29 (a) applies to the Appellate Division, and the sixty-day time restriction that the rule imposes for revising or revoking sentences is inapplicable.[13]

---

[12] Because the statute entrusts "[t]he superior court" to establish by rule "forms for appeals" to the Appellate Division and "regulations of procedure relative thereto, consistent with law, as justice may require," G. L. c. 278, § 28B, I do not think it appropriate for the court to create its own rule surrounding the timing of such revisions where there is a distinction between the jeopardy surrounding sentencing decisions of the Appellate Division and those of a sentencing judge.

[13] I do not violate principles of equal protection by saying so. See Harris v. McRae, 448 U.S. 297, 322 (1980) ("The

This is not to say that the Appellate Division can revise and revoke illegal sentences it has imposed without limitation. Although Selavka does not apply to sentence revisions by the Appellate Division, I take from it that the diminished expectation of finality stemming from an illegal sentence "does not afford carte blanche to correct erroneous sentences at any point subsequent to their initial imposition." Selavka, 469 Mass. at 513. The focus in a double jeopardy context is "the question of the defendant's legitimate expectation of finality." Ellsworth, 485 Mass. at 34. As discussed supra, the modification of an illegal sentence, even where the revised sentence is harsher, does not subject a defendant to multiple punishments if done in a timely manner. Selavka, supra at 510-511. In determining whether a defendant has a legitimate expectation of finality in a sentence, a reviewing court considers whether the defendant filed a motion for postconviction relief putting his sentence at issue, the illegality of the sentence, and whether the sentence has been fully served. See Tinsley, 487 Mass. at 391-392; Ellsworth, supra; Commonwealth v. Cumming, 466 Mass. 467, 471 (2013).

---

guarantee of equal protection . . . is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity" [footnote omitted]).

In Selavka, 469 Mass. at 514, the defendant had served seven months of incarceration before being released on parole. He had completed his committed sentence and begun serving a seven-year probationary term when the Commonwealth sought to impose the statutorily required global positioning system (GPS) monitoring condition, which was not imposed during his plea colloquy or at the subsequent sentencing hearing.  Id. at 503. Additionally, the defendant in Selavka was sentenced as a result of his guilty plea and was given no opportunity to withdraw the plea on the addition of the GPS monitoring condition, which did not "conform to [his] legitimate sentence expectation."  Id. at 514, quoting Commonwealth v. Goodwin, 458 Mass. 11, 21 (2010).[14] There, it would have been "contrary to the spirit of [Mass. R. Crim. P. 12 (c) (2), as appearing in 442 Mass. 1511 (2004),] for a judge to accept a plea bargain and impose the recommended sentence, and then, after the defendant has lost the opportunity to withdraw his plea, increase the sentence."  Selavka, supra at

---

[14] The defendant here was not in a "similar" position because he withdrew his direct appeal in February 2021 in reliance on his illegal sentence. Ante at note 10.  There is a significant distinction.  In the defendant's case, he did not relinquish his constitutional right to have a trial by jury by admitting to guilt and agreeing with the Commonwealth to a particular punishment.  He exercised his right to go to trial, was convicted by a jury, and, as a result, had no control over his sentence.  These circumstances are markedly different, as "defendants 'pleading guilty pursuant to a sentencing [agreement] bargain more certainty about their fate'" (citation omitted).  Goodwin, 458 Mass. at 20-21.

515, quoting Goodwin, supra. The defendant here is in a considerably different situation.

Here, the defendant, after being convicted by a jury, initially was sentenced by the trial judge to from six to eight years in State prison (for the incarcerated portion of his sentence) on April 23, 2019. He appealed to the Appellate Division, where he received a revised sentence (albeit an illegal one in his favor) in November 2020 of from four to six years in State prison. "[A]lthough '[t]he double jeopardy proscription protects the defendant against governmental oppression, it does not "relieve a defendant from the consequences of his voluntary choice" to invalidate his original punishment'" (citation omitted). Cumming, 466 Mass. at 471.[15] Neither the defendant nor the Commonwealth filed a motion to

---

[15] The court states: "The Commonwealth maintains that the defendant's finality interest in this case is different from the interest of the defendant in Selavka; it contends that because the defendant here appealed his sentence to the Appellate Division, he has no finality interest in an illegal sentence imposed by that body." Ante at    . This describes the concept of continuing jeopardy, which characterizes the position of every defendant who chooses to appeal his or her conviction. See Commonwealth v. Sanchez, 485 Mass. 491, 506-507 (2020) (protections against double jeopardy not offended where "defendant has knowingly unsettled the finality of his or her conviction and sentence by appealing" and "defendant is understood to remain in continuing jeopardy . . . throughout the appellate process"). Although I recognize that the defendant may have assumed that his "appellate" process had ended once the illegal November sentence had issued, his voluntary appeal of his sentence carries significant weight in determining whether he had a legitimate expectation of finality.

revise or revoke the November sentence, despite its illegality. Contrast Cumming, supra (defendant not placed twice in jeopardy for resentencing after defendant challenged his original sentences in motion under Mass. R. Crim. P. 30 [a], as appearing in 435 Mass. 1501 [2001]).  In May 2021, approximately six months after the imposition of the November sentence of from four to six years and approximately two years after he had received his initial sentence of from six to eight years, the Appellate Division notified him of its intention to revise and revoke what it now recognized to be an illegal sentence.

The May sentence imposed by the Appellate Division, of from five to six years, was considerably more favorable to the defendant than the original sentence that he received from the trial judge.  It did not increase the potential maximum amount of imprisonment that the defendant may serve, but rather increased the illegal four-year floor to a five-year floor, the minimally required period of incarceration.  See Stewart v. Scully, 925 F.2d 58, 63-65 (2d Cir. 1991) (plaintiff had expectation of finality where court could have reduced minimum term to comply with statute but chose to increase maximum term instead); Fogel, 829 F.2d at 90 ("The . . . court . . . was free to correct the defect in the original sentence but only to the extent necessary to bring the sentence into compliance with the statute.  Because the . . . court unnecessarily increased the

appellant's sentence, [it produced] a violation of the double jeopardy clause").  The defendant still was incarcerated for these offenses when his sentence was corrected, and he had a significant period remaining on his term of incarceration.  Contrast Schubert, 212 N.J. at 313 (increase of sentence after it has been completed violative of double jeopardy principles).  This situation patently is different from the facts in Selavka, where the defendant received an additional condition after his release from confinement that had a severe impact on his privacy interests and to which he did not agree when tendering a plea to the offenses with which he was charged.  Selavka, 469 Mass. at 514.  See Commonwealth v. Feliz, 481 Mass. 689, 704 (2019), S.C., 486 Mass. 510 (2020) (GPS monitoring cannot be deemed "minimally invasive" where it gathers significant information over long period of time and causes several "practical problems and life inconveniences").

Although the decision of the Appellate Division "shall be final," meaning the defendant may not appeal his or her sentence on fairness grounds to the appellate courts, G. L. c. 278, § 28B, and "[a] defendant's expectation of finality in his sentence increases once he has begun to serve that sentence," Selavka, 469 Mass. at 514, the defendant's expectation of finality in the illegal November sentence had not yet

"crystallized" for all of the above reasons.[16]  I would therefore decline to invalidate the corrected, legal May sentence imposed by the Appellate Division and to order reinstatement of the illegal November sentence.[17]

Finally, I briefly address the defendant's assertion that the May sentence was correctable, in the alternative, under Mass. R. Crim. P. 30 (a).  Although the single justice did not

_____

[16] Recognition of the "shall be final" language in § 28B must be read in light of all of the other factors characterizing the Appellate Division, its purpose, and the defendant's legitimate expectation of finality in this particular case, discussed at length supra.  See Barros, 460 Mass. at 1015 ("shall be final" in statute means that party may not appeal "as a matter of right to the appellate courts from the Appellate Division's decision").  I do not conclude that "because the decision of the Appellate Division is, by statute, final, the defendant has no legitimate finality interest in its determination." Ante at    .  Instead, after closely analyzing the nature of the Appellate Division and the factors surrounding the illegal sentence and its subsequent revision, I conclude that the defendant's expectation of finality in the illegal sentence had not "crystallized" in this case.

Furthermore, despite the court's decision in Selavka, and even if this case were not distinguishable, I am hesitant to conclude that this court should sanction an illegal sentence. See Commonwealth v. Montarvo, 486 Mass. 535, 542 (2020) ("We are bound by [the] choice[s]" of Legislature in interpreting and applying statutes).

[17] Although I appreciate the power that the Commonwealth and the courts wield in criminal cases, it is important that we consider the arguments on both sides in coming to a fair and just conclusion.  See Mele v. Fitchburg Dist. Court, 850 F.2d 817, 822 (1st Cir. 1988) ("opportunity to consider arguments on both sides . . . is [a concept] at the root of our adversarial system of justice").  There are legitimate interests and arguments on both sides of most issues that reach us.

address this claim, the defendant preserved the issue by raising it in his memorandum in support of his G. L. c. 211, § 3, petition to the single justice.  Contrast Lykus v. Commonwealth, 432 Mass. 160, 164 (2000) ("As the defendant did not raise this issue before the lower court, or the single justice, it is not properly before us on appeal").

> Rule 30 (a) states:
>
> "Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts."

The Reporters' Notes to rule 30 (a) indicate that it is available to seek the correction of an illegal sentence, which includes "facially illegal sentences" and "sentences premised upon a major misunderstanding by the sentencing judge," but not an illegally imposed sentence, "where the irregularity lies with the procedure employed in imposing the sentence."[18]  Reporters'

---

[18] "'An "illegal sentence" is one that is in excess of the punishment prescribed by the relevant statutory provision or in some way contrary to the applicable statute,' Commonwealth v. Layne, 21 Mass. App. Ct. 17, 19 (1985), or is 'premised on a major misunderstanding by the sentencing judge as to the legal bounds of his authority,' Commonwealth v. McGuinness, 421 Mass. 472, 475 (1995)."  Commonwealth v. Walters, 479 Mass. 277, 280 (2018).  "A sentence that contradicts the statutory provision in question, even where those contradictions favor the defendant, is also illegal."  Id. at 281.

Notes to Rule 30 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 339 (LexisNexis 2022-2023). According to the Reporters' Notes, an illegally imposed sentence is correctable on a motion filed pursuant to rule 29 (a). Id.

In Commonwealth v. Hill, 79 Mass. App. Ct. 806, 808-809 (2011), the Appeals Court held that rule 30 (a) may be used to challenge a sentence imposed by the Appellate Division. This conclusion is supported by recent case law from this court. See Sabree v. Commonwealth, 479 Mass. 1006, 1007 (2018) (defendant could have raised claim regarding Appellate Division's authority or jurisdiction to restructure and amend sentences pursuant to rule 30 [a]); Cucinelli v. Commonwealth, 477 Mass. 1004, 1004 n.3 (2017) (to extent defendant claimed that his new sentence ordered by Appellate Division was illegal, he could file motion under rule 30 [a]); Jones v. Commonwealth, 461 Mass. 1005, 1005-1006 (2012) (petitioner had other means to seek relief from decision of Appellate Division, one being rule 30 [a] motion). But see Callahan, 419 Mass. at 309 (once party enters appeal from sentence to Appellate Division, "the judge issuing the

---

In Layne, the Appeals Court held that a motion was filed improperly under rule 30 (a) where it did not allege an "illegal sentence," but alleged that the sentencing judge misapprehended that the applicable parole eligibility standards soon would be relaxed by the Legislature; such a motion would have been filed properly under rule 29 (a) within the relevant time constraints. Layne, 21 Mass. App. Ct. at 18-20.

order from which an appeal is taken is divested of jurisdiction to act on motions to rehear or to vacate" under rule 29 [a]). Considering our holding in Callahan, in my view, any rule 30 (a) motion filed by a defendant would need to be to the relevant panel of judges who imposed the sentence in the Appellate Division, despite the language in rule 30 (a) specifying that the motion is to be filed with the "trial judge."  The original sentencing judge, after appeal to the Appellate Division, is divested of jurisdiction.  Although "[t]he rule assigns the motion to the trial judge who heard the case, on the theory that his familiarity with the case can assist in its effective handling," where a defendant challenges his sentence as altered by the Appellate Division, it would be in the best position to respond to such a challenge.  McCastle, petitioner, 401 Mass. 105, 107 (1987).  See Averett, petitioner, 404 Mass. 28, 31 (1989) ("It is sensible to restrict an individual who has been convicted and imprisoned to rule 30 postconviction relief before the trial judge when that individual objects to the imposition of confinement, but it is not free, easy, cheap, or expeditious to impose a rule 30 hearing before a judge on a person demanding an immediate release from prison on grounds of which the judge is completely unaware").

In Commonwealth v. Simmons, 448 Mass. 687, 691 (2007), the court stated that the defendant's motion to vacate his sentence

because of alleged violations of his constitutional right to speedy sentencing and the sentencing judge's consideration of impermissible factors appropriately was treated as a motion pursuant to rule 30 (a) by the Appeals Court. In <u>Commonwealth</u> v. <u>Layne</u>, 386 Mass. 291, 297 (1982), the defendant filed an initial "motion to revise and revoke" under rule 30 (a). One year later, he filed another motion to vacate illegal sentences based on rule 30 (a), regarding whether the sentences originally imposed were indeterminate as required by G. L. c. 279, § 24, and whether he had a constitutionally protected right to have his sentences reviewed by a parole board. <u>Id</u>. The court stated that "these grounds could reasonably have been raised in the original motion," and on this basis dismissed the appeal from the order denying the motion. <u>Id</u>.

In <u>Commonwealth</u> v. <u>Bruzzese</u>, 437 Mass. 606, 614 (2002), the court held that a judge's revocation of the defendant's probation on one of his complaints, which resulted in him serving another year beyond what was contemplated by the order of the initial sentencing judge, "violated principles of double jeopardy," and thus, his "motion under rule 30 (a) should have been allowed." See <u>Commonwealth</u> v. <u>Costa</u>, 472 Mass. 139, 143 (2015) (rule 30 [a] proper mechanism for judge to correct now unconstitutional life sentence); <u>Commonwealth</u> v. <u>Parrillo</u>, 468 Mass. 318, 320 (2014) (rule 30 [a] was "proper mechanism by

which to challenge constitutionality of the [community parole supervision for life] sentencing scheme"); Cumming, 466 Mass. at 470-472 (considering defendant's double jeopardy challenges to judge's resentencing order pursuant to rule 30 [a]).

In light of this case law, regardless of whether the defendant's claim was that the May sentence was "illegal" or "illegally imposed," it is my position that rule 30 (a) would have been a proper vehicle through which to raise his double jeopardy challenge, if he had raised it with the Appellate Division. Cf. Aldoupolis, 386 Mass. at 269 ("The Reporters' Notes, not officially approved or reviewed by this court, are not binding on this court"). As I have explained supra, however, the delay in the correction of the illegal sentence here did not implicate principles of double jeopardy.

My determination that rule 29 (a) does not apply to the Appellate Division is not in conflict with my determination that rule 30 (a) does apply. Rule 30 (a), adopted in 1979, was created to "simplify post conviction procedure, while maintaining the full scope of relief previously available." Reporters' Notes to Rule 30 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 338 (LexisNexis 2022-2023). This rule permits a defendant to "seek release from illegal confinement or other restraint on their liberty" and seek the correction of an illegal sentence at any point while the

defendant's liberty is restricted, consolidating two formally separate remedies, a writ of error and habeas corpus.  <u>Id</u>. at 338-339.  See Mass. R. Crim. P. 30 (a) ("person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion"); St. 1979, c. 344, § 12, effective July 1, 1979; <u>Commonwealth</u> v. <u>Lupo</u>, 394 Mass. 644, 646 (1985).  There is no time limit in rule 30 (a), contrary to the sixty-day limitation in rule 29 (a).  In addition to a restraint of liberty such as incarceration or probation, the rule also encompasses sentences "contain[ing] a requirement that the defendant be subject to community parole supervision for life . . . or register as a sex offender."  <u>Commonwealth</u> v. <u>Williams</u>, 96 Mass. App. Ct. 610, 613 (2019).  The generous language in rule 30 (a) allowing a challenge to the legality of a sentence <u>at any time</u> by a defendant whose liberty is restrained suggests that it was intended to apply more broadly than rule 29 (a) for the purposes of a defendant's challenge to the legality of his or her sentence, and thus that rule 30 (a) should apply to the Appellate Division.  See Reporters' Notes to Rule 29 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 327 (LexisNexis 2022-2023) (rule 29 [a] [1]'s authority to challenge illegal sentence limited to Commonwealth and trial judge, because, in part, "[q]uite apart from [r]ule 29 [a], [r]ule

30 [a] gives the defendant the right to challenge an illegal sentence at any time").

In conclusion, because I do not think that rule 29 (a) applies to the Appellate Division, and in these circumstances, where the defendant still is serving the incarcerated portion of his sentence and where the November sentence was illegal, the May sentence revision did not violate the protections against double jeopardy. It simply allowed the Appellate Division to minimally correct the sentence to bring it within statutorily permissible parameters while remaining considerably reduced from the original sentence that the defendant received. Therefore, I would affirm the decision of the single justice to uphold the May sentence of from five to six years in State prison.